Markman, J.
We granted leave to appeal to consider whether Blockburger v United States, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), or People v Robideau, 419 Mich 458; 355 NW2d 592 (1984), sets forth the proper test in Michigan for determining when multiple punishments are barred on double jeopardy grounds.
Following a jury trial, defendant was convicted of two counts of first-degree felony murder, MCL 750.316(1)(b), with larceny as the predicate felony. Defendant was also convicted of two counts of armed robbery, MCL 750.529, and four counts of possession of a firearm during the commission of a felony, MCL 750.227b. Defendant appealed, asserting that his convictions for both first-degree felony murder and armed robbery violate the Double Jeopardy Clause of the Michigan Constitution, Const 1963, art 1, § 15. The Court of Appeals concluded that there was no evidence that defendant had committed the separate offenses of robbery and larceny and therefore held that defendant’s armed robbery convictions violated double jeopardy. As a result, the Court of Appeals vacated defendant’s two convictions and sentences for armed robbery and the accompanying convictions for felony-firearm. Unpublished opinion per curiam, issued December 27, 2005 (Docket No. 257353). We conclude that the Court of Appeals erred in its double jeopardy analysis by comparing the felony-murder convictions to the non-predicate felonies of armed robbery. Because armed robbery was not the predicate felony involved in the instant felony-murder convictions, reversal is not required pursuant to People v Wilder, 411 Mich 328; 308 NW2d 112 (1981). We further conclude that the language “same offense” in Const 1963, art 1, § 15 means *296 the same thing in the context of the “multiple punishments” strand of the Double Jeopardy Clause as it does in the context of the “successive prosecutions” strand addressed by the Court in People v Nutt, 469 Mich 565; 677 NW2d 1 (2004). We therefore hold that Blockburger sets forth the proper test to determine when multiple punishments are barred on double jeopardy grounds. Because each of the crimes for which defendant here was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the “same offense” and, therefore, defendant may be punished for each. Accordingly, we reverse the part of the judgment of the Court of Appeals that vacated the armed robbery convictions and sentences and two of the felony-firearm convictions and sentences, and remand this case to the trial court to reinstate defendant’s convictions and sentences for armed robbery and the accompanying felony-firearm convictions and sentences.
I. FACTS AND PROCEDURAL HISTORY
At approximately 10:30 a.m. on January 7, 2003, a customer entering the City Tire store in Pontiac discovered the bodies of store employee Stephen Putman and store owner Richard Cummings. Putman had died of a gunshot wound to the neck and Cummings had died from two gunshot wounds to the head. The police determined that $2,000 in cash that Cummings brought to the store from home to use in the store’s cash register was missing, as were the store’s proceeds from that morning. In addition, Pontiac police officers interviewed the victims’ families and determined that both Putman’s and Cummings’s wallets were missing and that the money Cummings carried in his front pocket was also missing.
*297 On January 8, 2004, the police received a call from Tywanda Smith, defendant’s wife, who informed them that defendant confessed to her that he had committed the murders.[1] Smith testified that defendant told her that he first asked “the young guy [Putman]” for the money but that “the young guy acted like he didn’t know what [defendant] was talking about and [defendant] shot him.” Defendant then asked the “old guy [Cummings]” where the money was, and Cummings responded, “What do you think you are going to do? You going to rob me?” Cummings then hit defendant on the hand with an unknown object and defendant responded by shooting Cummings twice in the head. Defendant then admitted that, after the shootings, he took money and a set of keys from the store, but did not take any vehicle. Defendant also told Smith that the police had no evidence implicating him in the murders because he threw the gun into the river.
Defendant was prosecuted for two counts of first-degree felony murder, with larceny as the predicate felony, two counts of armed robbery, and four counts of felony-firearm. Following a jury trial, defendant was convicted on all charges. He appealed, contending that his convictions for two counts of felony murder and two counts of armed robbery committed during the course of the murders constituted a violation of the Double Jeopardy Clause of the Michigan Constitution. The Court of Appeals undertook its analysis by noting that larceny is a lesser included offense of robbery and that *298 there was no evidence that defendant committed the separate offenses of robbery and larceny. Slip op at 2. On that basis, the Court of Appeals concluded that armed robbery, not larceny, was the predicate felony for the instant felony-murder convictions and, therefore, that it was bound by Wilder to reverse the armed robbery convictions as well as the accompanying felony-firearm convictions.[2] Id. We granted the prosecutor’s application for leave to appeal.[3] 475 Mich 864 (2006).
II. STANDARD OF REVIEW
A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo. Nutt, supra at 573.
III. ANALYSIS
Const 1963, art 1, § 15 states that “[n]o person shall be subject for the same offense to be twice put in jeopardy.”[4] The primary goal in interpreting a constitutional provision is to determine the text’s meaning to the ratifiers, the people, at the time of ratification. Wayne Co v Hathcock, 471 Mich 445, 468; 684 NW2d 765 (2004). Justice COOLEY described this principle of constitutional interpretation as follows:
*299 A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. “For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.” [Cooley, A Treatise on the Constitutional Limitations (Little, Brown, & Co, 1886), p 81 (citation omitted).]
The Double Jeopardy Clause affords individuals “three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.” Nutt, supra at 574. The first two protections are generally understood as the “successive prosecutions” strand of double jeopardy, while the third protection is commonly understood as the “multiple punishments” strand.
A. “SAME OFFENSE” FOR SUCCESSIVE PROSECUTIONS
Before 1973, the Court consistently construed Michigan’s Double Jeopardy Clause in a manner consistent with the federal courts’ interpretation of the Fifth Amendment of the United States Constitution. See, e.g., In re Ascher, 130 Mich 540, 545; 90 NW 418 (1902) (stating that “the law of jeopardy is doubtless the same under both [the federal and Michigan constitutions]”);[5] *300 People v Schepps, 231 Mich 260, 267; 203 NW 882 (1925) (quoting Ascher for the proposition that the Court is “committed” to the view of double jeopardy protections set forth by federal courts); People v Bigge, 297 Mich 58, 64; 297 NW 70 (1941) (holding that “[t]his State is committed to the view upon the subject of former jeopardy adopted by the Federal courts under the Federal Constitution”).[6]
In People v Townsend, 214 Mich 267; 183 NW 177 (1921), the Court addressed the issue whether a defendant’s conviction in municipal court of driving an automobile while intoxicated served as a bar to a subsequent prosecution for manslaughter arising out of the same drunken driving incident. We began our analysis by noting that under the federal interpretation of the Fifth Amendment, a defendant who commits two or more separate offenses during a single criminal transaction may be prosecuted for each, as long as the offenses are different. Id. at 275, citing Gavieres v United States, 220 US 338; 31 S Ct 421; 55 L Ed 489 (1911). To determine whether two offenses are the “same offense” for double jeopardy purposes, the Court cited the “same elements” test articulated by the Supreme Court of Massachusetts in Morey v Commonwealth, 108 Mass 433, 434 (1871). The Morey rule, which would later be adopted by the United States Supreme Court in Blockburger, held that offenses are not the “same offense” if each statute requires proof of an element that the other does not. The Court concluded that the misdemeanor offense of driving an automobile while intoxicated was not the “same offense” as involuntary manslaughter and therefore affirmed the subsequent conviction. Townsend, supra at 281.
*301 Thus, before 1973, the Court had construed Michigan’s Double Jeopardy Clause in a manner consistent with the interpretation of the Fifth Amendment by federal courts, Ascher, supra and held that the test for determining whether offenses are the “same offense” for double jeopardy purposes was whether each offense requires proof of a fact that the other does not. Townsend, supra. However, in People v White, 390 Mich 245; 212 NW2d 222 (1973), the Court abandoned this traditional understanding, and instead adopted the “same transaction” test for the “successive prosecutions” strand of double jeopardy. Shortly thereafter, in People v Cooper, 398 Mich 450, 461; 247 NW2d 866 (1976), the Court also abandoned the federal approach to successive prosecutions by different sovereigns in favor of a rule under which successive prosecutions could only proceed if “it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different.” Finally, in Robideau, the Court declined to adhere to the Blockburger test in the context of the “multiple punishments” strand of double jeopardy in favor of a rule intended to ascertain whether the Legislature intended to impose multiple punishments.
In Nutt, the Court granted leave to appeal to determine whether White’s interpretation of the language “same offense” in Const 1963, art 1, § 15 was consistent with the people’s understanding when they ratified the constitution. We undertook our analysis by noting that White’s creation of the “same transaction” test was inconsistent with the ordinary meaning of the phrase “offense” as a “crime” or “transgression.” Nutt, supra at 588. Moreover, and most critically, we concluded that White’s test was inconsistent with the understanding of the term “same offense” on the part of the ratifiers of our constitution. First, we noted that the framers of the *302 constitution recognized that the Court had interpreted the double jeopardy provision of the 1908 Constitution in a manner consistent with the federal constitution. Second, we quoted the Address to the People, 2 Official Record, Constitutional Convention 1961, p 3364, which stated:
“[Const 1963, art 1, § 15] is a revision of Sec. 14, Article II, of the present constitution. The new language of the first sentence involves the substitution of the double jeopardy provision from the U.S. Constitution in place of the present provision which merely prohibits ‘acquittal on the merits.’ This is more consistent with the actual practice of the courts in Michigan.” [Nutt, supra at 590.]
In other words, when the people ratified Const 1963, art 1, § 15, they were advised that “(1) the double jeopardy protection conferred by our 1963 Constitution would parallel that of the federal constitution, and (2) that the proposal was meant to bring our double jeopardy provision into conformity with what this Court had already determined it to mean.”[7] Nutt, supra at 590. In 1963, the federal Double Jeopardy Clause permitted successive prosecutions for all crimes committed during a single “transaction,” as long as each crime required proof of a fact that the other did not. Blockburger, supra at 304. The Nutt Court noted that the Blockburger test “ ‘focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, not *303 withstanding a substantial overlap in the proof offered to establish the crimes.’ ” Nutt, supra at 576 (citation omitted). Because the “same transaction” test set forth in White is inconsistent with the federal approach, it is also inconsistent with the understanding of the ratifiers and, as a result, was overruled. Nutt, supra at 591-592.
In People v Davis, 472 Mich 156; 695 NW2d 45 (2005), the Court granted leave to appeal to determine whether the rule announced by Cooper for determining whether successive prosecutions by different sovereigns were barred on double jeopardy grounds was consistent with the meaning of “same offense” set forth in the constitution. We undertook our analysis by noting Nutt’s conclusion that the ratifiers of our constitution intended that Michigan’s Double Jeopardy Clause be construed consistently with Michigan precedent and the Fifth Amendment. At the time of ratification, the federal courts held that prosecution by one sovereign does not preclude a subsequent prosecution by a different sovereign based on the same act, where “ ‘by one act [the defendant] has committed two offences, for each of which he is justly punishable.’ ” Bartkus v Illinois, 359 US 121, 132; 79 S Ct 676; 3 L Ed 2d 684 (1959) (citation omitted); see also Heath v Alabama, 474 US 82, 88; 106 S Ct 433; 88 L Ed 2d 387 (1985). The rule set forth in Cooper was based on the Court’s detection of a trend in federal cases that brought Bartkus into disrepute. However, we recognized in Davis that this “trend” never came to fruition and, in fact, the United States Supreme Court validated the Bartkus reasoning in Heath. Therefore, in accord with the understanding that Michigan’s double jeopardy provision should “be construed consistently with the federal double jeopardy jurisprudence that then existed,” we overruled Cooper in Davis, supra at 168, and held that a defendant who commits one *304 criminal act that violates the laws of two different sovereigns has committed two criminal acts for double jeopardy purposes.
In sum, offenses do not constitute the “same offense” for purposes of the “successive prosecutions” strand of double jeopardy if each offense requires proof of a fact that the other does not.
B. “SAME OFFENSE” FOR MULTIPLE PUNISHMENTS
X. PRE-X963 CASELAW
At issue in this case is whether “same offense” has the same meaning in the context of the “multiple punishments” strand of double jeopardy as it does in the context of the “successive prosecutions” strand. Pursuant to Nutt, we first examine Michigan caselaw addressing the “multiple punishments” strand of double jeopardy at the time of the ratification of the 1963 Constitution. While Michigan courts routinely applied the federal standard to the “successive prosecutions” strand, the Court did not address the “multiple punishments” strand until 1976. Robideau, supra at 481. Therefore, we must examine federal caselaw to determine how the Fifth Amendment was applied in the context of multiple punishments at the time our constitution was ratified. In Blockburger, the defendant was convicted of selling eight grains of morphine hydrochloride outside its original packaging[8] and of engaging in that sale without a written order of the purchaser as *305 required by the statute.[9] The defendant claimed that because both convictions stemmed from a single narcotics sale, he could lawfully be punished only once for that single act. The United States Supreme Court undertook its analysis by noting that the language of the statutes created two distinct criminal offenses. In order to determine whether a defendant who, by a single act, commits two distinct criminal violations may be punished for both, the United States Supreme Court held that
the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342 .... In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Commonwealth, 108 Mass. 433: “A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.” Compare Albrecht v. United States, 273 U.S. 1, 11-12[; 47 S Ct 250; 71 L Ed 505 (1927)][10].... [Blockburger, supra at 304.]
*306 Because each of the violations of the Harrison Narcotic Act at issue contained an element that the other did not, the United States Supreme Court held that the defendant could be punished for each violation.
The United States Supreme Court reaffirmed the “same elements” approach to multiple punishments in Gore v United States, 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958). In Gore, the defendant was charged with two counts of selling heroin “not in pursuance to a written order” of the person receiving the drugs; two counts of dispensing drugs that were not “in the original stamped package or from the original stamped package”; and two counts of facilitating concealment and sale of drugs, with knowledge that the drugs had been unlawfully imported. The defendant argued that the purpose behind each statute was to outlaw the nonmedicinal sale of narcotics and, therefore, Congress desired to punish only for a single offense when these multiple infractions are committed through a single sale. The United States Supreme Court disagreed, noting that, as in Blockburger, Congress’s decision to create three separate criminal violations, each with elements independent of the others, demonstrated that it intended that each violation be punishable separately. The Court went on to characterize the defendant’s argument as a policy argument and opined that such policy matters are better left to Congress:
In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility,... these are peculiarly questions of legislative policy. [Id. at 393.]
*307 To summarize, at the time the 1963 Constitution was ratified, the United States Supreme Court had interpreted the language “same offense” in the Fifth Amendment to mean multiple punishments were authorized if “ ‘each statute requires proof of an additional fact which the other does not Blockburger, supra at 304 (citation omitted). While there was no Michigan caselaw construing the language “same offense” as it applied to the “multiple punishments” strand of double jeopardy, our courts had defined the term “same offense” for purposes of successive prosecutions by applying the federal “same elements” test.
2. POST-1963 CASELAW
The Court first addressed the “multiple punishments” strand of double jeopardy in People v Martin, 398 Mich 303; 247 NW2d 303 (1976). In Martin, the defendant was convicted of both possession and delivery of the same heroin. The Court noted that while a defendant can be charged for each act that constitutes a separate crime, “when tried for an act which includes lesser offenses, if the jury finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense.” Id. at 309. The Court found that possession of the heroin was a lesser included offense of its delivery because “[possession of the heroin present in this case was that necessary to its delivery.” Id. at 307 (emphasis in original). In other words, rather than focusing on the elements of the charged offenses, the Court focused on the facts of the particular case. While the Court cited a similar analysis by the United States Court of Appeals for the First Circuit in O’Clair v United States, 470 F2d 1199, 1203 (CA 1, 1972), it failed even to cite Blockburger, let alone explain why the “same elements” test did not apply. *308 Rather, the Court justified its approach by quoting with approval the Supreme Judicial Court of Maine in State v Allen, 292 A2d 167, 172 (Me, 1972), which held:
The possession of narcotic drugs is an offense distinct from the sale thereof. But in the instant case the possession and sale clearly constituted one single and same act. The possession, as legally defined, is necessarily a constituent part of the sale, as legally defined. Where the only possession of the narcotic drug is that incident to and necessary for the sale thereof, and it does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused’s involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand.
In People v Stewart (On Rehearing), 400 Mich 540; 256 NW2d 31 (1977), the Court addressed the similar issue whether a defendant could be punished for the possession and sale of the same narcotic. The Court began its analysis by acknowledging that a defendant may possess a narcotic without selling it and, likewise, may sell a narcotic without possessing it. However, the Court again failed to acknowledge Blockburger and instead applied the fact-based approach of Martin, concluding that “from the evidence adduced at this trial, the illegal possession of heroin was obviously a lesser included offense of the illegal sale of heroin. When the jury in the case at bar found the defendant guilty of the illegal sale of this heroin, they necessarily found him guilty of possession of the same heroin.” Id. at 548 (emphasis deleted).
In Wayne Co Prosecutor v Recorder’s Court Judge, 406 Mich 374; 280 NW2d 793 (1979), the Court addressed the question whether double jeopardy forbade separate convictions and sentences for felony-firearm, MCL 750.227b, and the underlying felony. The Court *309 undertook this analysis by noting that the language of MCL 750.227b, defining the offense as a “felony” and requiring that the two-year sentence must be served “in addition to” the sentence for the underlying felony, demonstrated “that the Legislature intended to make the carrying of a weapon during a felony a separate crime and intended that cumulative penalties should be imposed.” Wayne Co Prosecutor, supra at 391. In order to determine whether such an intention was consistent with the Double Jeopardy Clause, the Court then applied the “same elements” test from Blockburger. The Court observed that “[i]n applying the Blockburger rule, the United States Supreme Court has focused on the legal elements of the respective offenses, not on the particular factual occurrence which gives rise to the charges.” Id. at 395. Applying Blockburger, the Court then determined that the felony at issue, second-degree murder, contained an element that felony-firearm did not, namely a killing committed with malice, and, likewise, that felony-firearm contained an element that second-degree murder did not, namely that the defendant carried or possessed a firearm during the commission of any felony. Therefore, the Court concluded that the imposition of multiple punishments was not barred on double jeopardy grounds.[11] Id. at 397.
However, in People v Jankowski, 408 Mich 79; 289 NW2d 674 (1980), the Court reverted to the fact-based approach of Martin and Stewart. In Jankowski, the defendant was convicted of armed robbery, larceny over $100, and larceny in a building as the result of one felonious taking. The Court began its analysis by noting *310 that, unlike in Wayne Co Prosecutor, there was no clear intention on the part of the Legislature that the crimes at issue be punished separately. The Court assessed the facts adduced at trial and determined that, because there was only one felonious taking, the larceny convictions constituted lesser offenses to the armed robbery conviction and therefore the larceny convictions were barred by double jeopardy.
The Court applied the same reasoning to first-degree felony murder and the predicate felony in Wilder. In Wilder, the defendant was convicted of both armed robbery and first-degree felony murder for a killing committed during the perpetration of that robbery. The Court began its analysis by noting that under the fact-based approach set forth in Martin and Stewart, if “the proof adduced at trial indicates that one offense is a necessarily or cognate lesser included offense of the other, then conviction of both the offenses will be precluded.” Wilder, supra at 343-344. The Court held that because the evidence required to prove first-degree felony murder also requires proof of the armed robbery, armed robbery is a lesser offense of first-degree felony murder and therefore multiple punishments for each offense were barred by double jeopardy.[12] The Court went on to explain that its approach to the “multiple punishments” strand of double jeopardy differed from the federal approach set forth in Blockburger:
[T]he test concerning multiple punishment under our constitution has developed into a broader protective rule than that employed in the Federal courts. Under Federal authority, the Supreme Court established the “required *311 evidence” test enunciated in Blockburger[, supra]. See also its original expression in Morey v Commonwealth, 108 Mass 433 (1871). In Blockburger, the Court outlined their test:
“The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” [Blockburger, supra at] 304.
This approach isolates the elements of the offense as opposed to the actual proof of facts adduced at trial. See Harris[, supra]; United States v Kramer, 289 F2d 909, 913 (CA 2, 1961). Under this test, convictions of two criminal offenses arising from the same act are prohibited only when the greater offense necessarily includes all elements of the lesser offense. Accordingly, conviction of both offenses is precluded only where it is impossible to commit the greater offense without first having committed the lesser offense. From the perspective of lesser included offenses, the Supreme Court in cases concerning double jeopardy has thus adhered to the common-law definition of such offenses. See People v Ora Jones [395 Mich 379, 387; 236 NW2d 461 (1975)].
The Federal test in Blockburger can thus be distinguished from this Court’s approach in two principal ways. First, we find the proper focus of double jeopardy inquiry in this area to be the proof of facts adduced at trial rather than the theoretical elements of the offense alone. Proof of facts includes the elements of the offense as an object of proof. Yet, the actual evidence presented may also determine the propriety of finding a double jeopardy violation in any particular case. See [Martin, supra at 309; Stewart, supra at 548; Jankowski, supra at 91].
Second, we have held that double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses. [Wilder, supra at 348 n 10.]
*312 Finally, in Robideau, the Court addressed the issue whether double jeopardy prohibits multiple punishments for convictions of both first-degree criminal sexual conduct, MCL 750.520b(1)(c) (penetration under circumstances involving any “other felony”), and the underlying “other felony” of either armed robbery or kidnapping used to prove the charge of first-degree criminal sexual conduct. The Court undertook its analysis by noting that double jeopardy protection against multiple punishments constitutes a restraint on the courts, not the Legislature. The Court acknowledged that, where the intention of Congress is not clear, federal courts rely on Blockburger to determine whether Congress intended to permit multiple punishments. However, the Court rejected the Blockburger test, noting:
When applied in the abstract to the statutory elements of an offense, [the Blockburger test] merely serves to identify true lesser included offenses. While it may be true that the Legislature ordinarily does not intend multiple punishments when one crime is completely subsumed in another, Blockburger itself is of no aid in making the ultimate determination. Although its creation of a presumption may make a court’s task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test. [Robideau, supra at 486.]
In place of Blockburger, the Court set forth “general principles” to be used when assessing legislative intention. Those principles include, but are not limited to, the following:
Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same *313 social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. For example, the crimes of larceny over $ 100, MCL 750.356; MSA 28.588, and larceny in a building, MCL 750.360; MSA 28.592, although having separate elements, are aimed at conduct too similar to conclude that multiple punishment was intended.
A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions. [Id. at 487-488.]
The Court applied its new test by first looking to the maximum penalty available under each statute to determine whether the Legislature intended to permit multiple punishments. Where the Legislature designates a lower maximum penalty for the “lesser” crime than for the “greater” crime, the Court held that it can be inferred that the Legislature did not intend multiple punishments. However, the Court held that the fact that first-degree criminal sexual conduct and the predicate offenses of armed robbery and kidnapping all carry a maximum penalty of life imprisonment served as evidence that the Legislature did intend multiple punishments there. Moreover, the Court found that the “social norm” the Legislature intended to protect by enactment of the criminal sexual conduct statute, i.e., protecting citizens against nonconsensual sexual penetration, would be poorly served by classifying the predicate felony as the “same offense” for double jeopardy purposes.
*314 If we were to conclude that only one conviction could result from fact situations such as the cases at bar, the result would be that the defendants, having completed the predicate felonies of kidnapping and robbery, could then embark on one of the most heinous crimes possible, with no risk either of a second conviction or a statutorily increased maximum sentence. [Id. at 490.]
The Court concluded therefore that under its test, the Legislature intended that first-degree criminal sexual conduct and the predicate felonies of armed robbery and kidnapping be punished separately.
3. ROBIDEAU AND THE RATIFIERS’ UNDERSTANDING
Robideau’s creation of a new rule to determine whether two statutory offenses constitute the “same offense” for double jeopardy purposes was predicated on the Court’s conclusions in previous cases that: (1) Michigan’s Double Jeopardy Clause afforded greater protections than the Double Jeopardy Clause of the United States Constitution, Wilder, supra at 348 n 10; and (2) the Blockburger test did not account for Michigan’s then-current recognition of “cognate” lesser included offenses as “lesser offenses” under a fact-driven analysis. This conclusion that the Michigan Constitution affords greater protection than the Fifth Amendment has no basis in the language of Const 1963, art 1, § 15, the common understanding of that language by the ratifiers, or under Michigan caselaw as it existed at the time of ratification. Further, the concern expressed by the Court that Blockburger does not account for cognate lesser included offenses is no longer pertinent in light of People v Cornell, 466 Mich 335, 353; 646 NW2d 127 (2002).[13] Finally, nothing in the language of *315 the constitution indicates that the ratifiers intended to give the term “same offense” a different meaning in the context of the “multiple punishments” strand of double jeopardy than it has in the context of the “successive prosecutions” strand. In the absence of any evidence that the term “same offense” was intended by the ratifiers to include criminal offenses that do not share the same elements, we feel compelled to overrule Robideau and preceding decisions that are predicated on the same error of law, and to hold instead that Block-burger sets forth the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15.[14]
We conclude that in adopting Const 1963, art 1, § 15, the ratifiers of our constitution intended that our double jeopardy provision be construed consistently with then-existing Michigan caselaw and with the interpretation given to the Fifth Amendment by federal courts at the time of ratification. We further conclude *316 that the ratifiers intended that the term “same offense” be given the same meaning in the context of the “multiple punishments” strand of double jeopardy that it has been given with respect to the “successive prosecutions” strand. As we noted in Nutt, supra at 594 (citation omitted), “ ‘there is no authority, except Grady [v Corbin, 495 US 508; 110 S Ct 2084; 109 L Ed 2d 548 (1990)], for the proposition that [the Double Jeopardy Clause] has different meanings [in different contexts],’ ” and Grady has been specifically overruled by United States v Dixon, 509 US 688, 704; 113 S Ct 2849; 125 L Ed 2d 556 (1993). At the time of ratification, we had defined the language “same offense” in the context of successive prosecutions by applying the federal “same elements” test. In interpreting “same offense” in the context of multiple punishments, federal courts first look to determine whether the legislature expressed a clear intention that multiple punishments be imposed. Missouri v Hunter, 459 US 359, 368; 103 S Ct 673; 74 L Ed 2d 535 (1983); see also Wayne Co Prosecutor, supra. Where the Legislature does clearly intend to impose such multiple punishments, “ ‘imposition of such sentences does not violate the Constitution,’ ” regardless of whether the offenses share the “same elements.” Id. (citation and emphasis deleted). Where the Legislature has not clearly expressed its intention to authorize multiple punishments, federal courts apply the “same elements” test of Blockburger to determine whether multiple punishments are permitted. Accordingly, we conclude that the “same elements” test set forth in Blockburger best gives effect to the intentions of the ratifiers of our constitution.
C. APPLICATION
We first conclude that the Court of Appeals erred in its double jeopardy analysis by comparing the first- *317 degree felony murder conviction with the non-predicate felony of armed robbery.[15] There is no Michigan author *318 ity for the proposition that double jeopardy forbids the imposition of multiple punishments for felony murder and a non-predicate felony.[16] Therefore, the proper offenses to be analyzed under the Blockburger test are the felonies for which defendant was convicted — first-degree felony murder and armed robbery.
Defendant’s convictions of first-degree felony murder and the non-predicate armed robbery withstand constitutional scrutiny under the “same elements” test. The elements of first-degree felony murder are: “ ‘(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], *319 (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b), here larceny].’ ” People v Carines, 460 Mich 750, 758-759; 597 NW2d 130 (1999) (citation omitted). The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim’s presence or person (3) while the defendant is armed with a weapon. Id. at 757. First-degree felony murder contains elements not included in armed robbery — namely a homicide and a mens rea of malice. Likewise, armed robbery contains elements not necessarily included in first-degree felony murder — namely that the defendant took property from a victim’s presence or person while armed with a weapon. Accordingly, we conclude that these offenses are not the “same offense” under either the Fifth Amendment or Const 1963, art 1, § 15 and therefore defendant may be punished separately for each offense.
IV RESPONSE TO JUSTICE KELLY
Justice KELLY asserts that we have “systematically and drastically altered Michigan double jeopardy jurisprudence.” Post at 340. In fact, our goal in interpreting provisions of our constitution is, and has always been, to give those provisions the meaning that the ratifiers intended. When the people ratified Const 1963, art 1, § 15, they understood that the term “same offense” would be construed as it always had been under Michigan caselaw on that point, i.e., in a manner consistent with the interpretation of the federal constitution. This was a critical understanding at the time, since the federal Double Jeopardy Clause had not yet been “incorporated” and applied against the states. See Benton v Maryland, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). Thus, the state Double Jeopardy Clause carried *320 far greater independent significance than it does today, and the people took care to state their intentions about what it meant. These intentions must serve as the touchstone in determining the meaning of Michigan’s Double Jeopardy Clause. However, in White and its progeny, this Court disregarded the intentions of the ratifiers and substituted its own judgments regarding how double jeopardy principles should apply in this state.
The Court began this process of judicial amendment in White when it abandoned the “same elements” test that had been recognized in this state for at least 60 years, Ascher, supra at 545, in favor of the “same transaction” test advocated by Justice Brennan in his concurring statement in Ashe v Swenson, 397 US 436, 448; 90 S Ct 1189; 25 L Ed 2d 469 (1970). While White extolled the virtues of the “same transaction” test and noted that it had been adopted by “many” other state courts, it failed to mention that the test had been explicitly rejected in both Ascher and Townsend. Moreover, the Court dismissed out of hand a statement made just one year earlier by the authoring justice in White that the question whether the “same transaction” test should be adopted was “properly a decision for the Legislature and not for this Court.” People v Grimmett, 388 Mich 590, 607; 202 NW2d 278 (1972). Thus, the Court dismissed the holdings of Ascher, Townsend, and Grimmett, each of which was consistent with the express intentions of the ratifiers, in order to pursue what the Court believed was the “only meaningful approach to the constitutional protection against being placed twice in jeopardy.” White, supra at 257-258.
In Cooper, the Court continued to implement its own preferred policies in the realm of double jeopardy. The Court began its analysis by acknowledging that pre *321 1963 federal easelaw, specifically Bartkus, had held that when a defendant by one act violates the laws of two different sovereigns, double jeopardy does not bar the defendant’s prosecution by both. Despite acknowledging that Bartkus remained good law, the Court hesitated to apply its rule, identifying an alleged “trend” away from the logical underpinnings of that decision. However, it also hesitated to adopt the defendant’s position that the dual-sovereignty doctrine should be overruled in its entirety. Rather, the Court articulated a new “middle” position derived from a post-1963 decision of the Pennsylvania Supreme Court. Under this new rule, successive prosecutions by separate sovereigns were permissible only when “the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different.” Cooper, supra at 461. While the Court claimed that our constitution was the source of its authority for this new approach, it failed to cite any Michigan easelaw, and acknowledged that its holding was based, at least in part, on “ ‘some consideration [of] public policy.’ ” Id., quoting People v Beavers, 393 Mich 554, 581; 227 NW2d 511 (1975) (Coleman, J., dissenting).
Thus, at the time People v Nutt was decided, this Court’s double jeopardy jurisprudence had become largely unmoored from its constitutional foundation. In White and its progeny, the Court had disregarded the ratifiers’ understanding of the phrase “same offense,” and instead implemented a definition of the term that was consistent with its own ideas of “public policy.” However, in Nutt, we recognized that it was the ratifiers’ policy choices, and not those of the judiciary, which must govern our interpretation of the constitution. When White adopted the “same transaction” test, it acted contrary to the expressed intentions of the ratifiers that Michigan’s Double Jeopardy Clause be inter *322 preted in a manner consistent with the federal constitution, in accord with our then-existing caselaw. Therefore, in order to implement the policy determinations of the people, we overruled White and reinstated the meaning of the phrase “same offense” as it was understood by the ratifiers.
Likewise, in People v Davis, we recognized that the entire foundation for Cooper’s rejection of the dual-sovereignty doctrine had been its “detection of a trend” calling Bartkus into question. In fact, the opposite proved to be true, and the United States Supreme Court later affirmed the dual-sovereignty doctrine in Heath. Because Cooper had been wrong about the status of federal double jeopardy analysis at the time of ratification, its adoption of the Pennsylvania standard in dual-sovereignty cases became simply untenable. Rather, the correct standard — that intended by the ratifiers — is that a defendant who commits one criminal act that violates the laws of two different sovereigns has committed two different offenses for double jeopardy purposes. Davis, supra at 168.
Justice KELLY does not even purport to argue that Robideau can be maintained in light of Nutt and Davis.[17] Rather, Justice KELLY would apparently over *323 rule all of our existing double jeopardy jurisprudence and return this Court to the days when it could safely disregard the intentions of the ratifiers, at least when such intentions conflicted with judicial preferences and assessments of public policy. The approach championed by Justice KELLY is simply incompatible with the paramount duty of the judiciary to construe the people’s constitution to mean what the ratifiers intended it to mean. Moreover, in order to maintain Robideau, this Court would be required to hold that the term “same offense” means different things depending on which double jeopardy protection is at issue, a proposition that has no historical or textual basis. Nutt, supra at 594. Therefore, in order to restore Const 1963, art 1, § 15 to the meaning the ratifiers intended, Robideau must be overruled.
In addition to restoring the law to what the ratifiers of the constitution manifestly intended, we believe that by its double jeopardy decisions, this Court has also restored a more responsible criminal justice system than that urged by Justice KELLY. In particular, this Court’s approach to double jeopardy will better ensure that criminal perpetrators be punished for all, not merely some, of their offenses; at the same time, it will make it more likely that policy and prosecutorial judgments assigned by our constitution to the legislative and executive branches are undertaken by those branches, rather than by the courts.
*324 V CONCLUSION
We conclude that “same offense” in Const 1963, art 1, § 15 means the same thing in the context of the “multiple punishments” strand of double jeopardy as it does in the context of the “successive prosecutions” strand addressed by the Court in Nutt. The test set forth in Robideau for determining whether the Legislature intended to permit multiple punishments is inconsistent with the understanding of the ratifiers of our constitution that Michigan’s Double Jeopardy Clause be construed consistently with the Fifth Amendment, and therefore Robideau must be overruled. We further conclude that the Blockburger same-elements test, as the reigning test in this Court in the context of the “successive prosecutions” strand and in the federal courts in the context of the “multiple punishments” strand in 1963, effectuates the intentions of the ratifiers. Because each of the felonies of which defendant was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the “same offense” under either Const 1963, art 1, § 15 or US Const, Am V. Accordingly, we reverse the part of the judgment of the Court of Appeals that vacated the armed robbery convictions and sentences and two of the felony-firearm convictions and sentences, and remand this case to the trial court to reinstate defendant’s convictions and sentences for armed robbery and the accompanying felony-firearm convictions and sentences.
Taylor, C.J., and Corrigan and Young, JJ., concurred with Markman, J.
WEAVER, J. I concur in all except part IV

 While defendant told Smith about the murders “some days” after they occurred, she did not contact the police until she saw newspaper and television coverage commemorating the one-year anniversary of the murders. The television coverage included a plea for information to assist in the investigation of the murders. Smith admitted on cross-examination that she told no one about her knowledge of the murders until contacting the police.

 The Court of Appeals noted its agreement with Justice Corrigan's dissent in People v Curvan, 473 Mich 896, 903 (2005), in which she called into question the decision in Wilder that multiple punishments for felony murder and the predicate felony were barred on double jeopardy grounds, and stated that, absent Wilder, it would have held that “felony-murder is a distinct category of murder and not an enhanced form of armed robbery----” Slip op at 2 n 1.

 We denied defendant’s application for leave to appeal. 475 Mich 871 (2006).

 The analogous provision in the federal constitution, US Const, Am V, states that “[n]o person shall... be subject for the same offence to be twice put in jeopardy of life or limb ....”

 Ascher interpreted the Double Jeopardy Clause of Const 1850, art 6, § 29, which stated, “No person after acquittal upon the merits shall be tried for the same offense.”

 Schepps and Bigge each interpreted the Double Jeopardy Clause of Const 1908, art 2, § 14, which stated, “No person, after acquittal upon the merits, shall be tried for the same offense.”

 By stating that the Michigan and federal double jeopardy clauses should be construed in a parallel fashion, “we do not mean that we are bound in our understanding of the Michigan Constitution by any particular interpretation of the United States Constitution.” Harvey v Michigan, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003). We mean only that we have been persuaded in the past that interpretations of the Double Jeopardy Clause of the Fifth Amendment have accurately conveyed the meaning of Const 1963, art 1, § 15 as well.

 The defendant was convicted under the former Harrison Narcotic Act, 26 USC 692, which stated:
It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs [opium and other narcotics] except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps *305 from any of the aforesaid drugs shall he prima facie evidence of a violation of this section by the person in whose possession same may be found....

 The defendant was convicted under the former 26 USC 696, which stated:
It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs specified in section 691 of this title, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.

10 In Albrecht, the United States Supreme Court held that “[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which *306 it has power to prohibit and punishing also the completed transaction.”

 The Court distinguished Martin and Steuiart on the basis that “the Legislature has clearly expressed in the felony-firearm statute an intent to authorize multiple convictions and cumulative punishments.” Id. at 402.

 The Court acknowledged that “the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery . . ..” Id. at 345.

 In Cornell, we held that an offense is an “offense inferior to that charged in the indictment” for purposes of MCL 768.32(1) when “ ‘the *315 lesser offense can be proved by the same facts that are used to establish the charged offense.’ ” Cornell, supra at 354 (citation omitted). In other words, an offense is the “same offense” for purposes of jury instructions if conviction of the greater offense necessarily requires conviction of the lesser offense.

 In deciding whether to overrule a precedent, we consider: (1) whether the earlier decision was wrongly decided; and (2) whether practical, real-world dislocations would arise from overruling the decision. Robinson v Detroit, 462 Mich 439, 464-466; 613 NW2d 307 (2000). As discussed earlier in this opinion, we believe that Robideau and preceding decisions that are predicated on the same error of law were wrongly decided because they are inconsistent with the common understanding of “same offense.” Moreover, we can discern no practical, real-world dislocations or confusion that would arise from overruling Robideau. No reasonable person, in reliance on Robideau, would commit additional felonies during a criminal transaction in the hope that such additional criminal acts will not be punished separately. Finally, and not insignificantly in our judgment, failing to overrule Robideau would produce inconsistent rules regarding the meaning of the language “same offense” in Const 1963, art 1, § 15.

 The Court of Appeals held that armed robbery was the “true” predicate felony in this case because “larceny is a necessarily included lesser offense of robbery, and because, factually, there was no evidence that defendant committed separate offenses of robbery and larceny, defendant’s armed robbery convictions violate double jeopardy protections.” Slip op at 2. Similarly, Justice Kelly argues that the prosecutor’s failure to distinguish between the property taken during the armed robbery and the property taken during the larceny establishes that there was not sufficient evidence to establish that defendant committed both crimes. Post at 333-334. However, as Justice Kelly acknowledges, the prosecutor’s comments to the jury during closing argument do not constitute evidence. People v Fields, 450 Mich 94, 116 n 26; 538 NW2d 356 (1995). Rather, to determine whether there was sufficient evidence to sustain each of the instant convictions, this Court must review the evidence “in a light most favorable to the prosecution ... and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt[.]” People v Hampton, 407 Mich 354, 368; 285 NW2d 284 (1979) (citations omitted). Here, the evidence adduced at trial demonstrates that after the murder, both victims were missing their wallets, the store’s keys were missing, and money was missing from the cash drawer of the store. A reasonable juror could well conclude beyond a reasonable doubt that defendant stole the money, the keys, and the wallets. Further, a reasonable juror could well conclude that there were two separate takings of property in this case — the keys and the money from the cash drawer (which belonged to the store) and the wallets and the cash from the victims. Thus, despite a lack of clarity by the prosecutor in his closing argument, when viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the separate offenses of armed robbery and larceny.
Nor are we persuaded by Justice Cavanagh that the Court’s decision in People v Wakeford, 418 Mich 95; 341 NW2d 68 (1983), supports the Court of Appeals conclusion that there was only one taking. In Wakeford, defendant robbed a market at gunpoint, forcing two separate cashiers to turn over the proceeds of their registers. Defendant claimed that his two convictions of armed robbery violated the Double Jeopardy Clause because each occurred during the same criminal transaction. This Court rejected that argument, noting that defendant assaulted and robbed two separate people and, therefore, could be held criminally hable for both. We also noted in dictum that, had this been a larceny charge, “the theft of several items at the same time and place constitutes a single larceny.” *318 Id. at 112. Justice Cavanagh seizes on this dictum to support his argument that, once the instant defendant was convicted of larceny, that conviction encompassed all the property stolen in this case and that “no property remained that could have been separately taken as part of an armed robbery.” Post at 330. We disagree. In Wakeford there was a single victim from whom the defendant took multiple items. Thus, the dictum from Wakeford suggests that a defendant may not be convicted of multiple counts of larceny for different items taken from a single victim. However, in the instant case, there were three different victims — the proprietor of the store, Putman, and Cummings. It cannot be the case that once a defendant engages in a larceny, the defendant is free to take property from anyone else in the immediate vicinity without fear of any additional punishment.

 Because armed robbery is not the predicate felony for the instant first-degree felony murders, we need not address Wilder’s holding that the constitution bars multiple punishments for first-degree felony murder and the predicate felony, or Justice Cavanagh’s concern that Block-burger “has its limitations” in cases involving compound offenses. Post at 326. However, we note that the Court in Wilder based its holding on the fact that “double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses.” Wilder, supra at 349 n 10. Wilder’s focus on the “proof of facts adduced at trial,” id., seems questionable in light of the distinction between cognate lesser offenses and lesser included offenses dictated by the Court in Cornell.

 Justice Kelly “continuéis] to reject the majority’s presumption that the voters of our state intended that Michigan’s Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted.” Post at 343. While it is understandable that Justice Kelly would continue to adhere to her dissenting position in Nutt, the majority opinion in that case nonetheless remains binding law. Yet, Justice Kelly does not even attempt to argue that Robideau, which is being overruled here, can somehow be harmonized with Nutt. Given Justice Kelly’s impassioned opposition to our double jeopardy jurisprudence, and her statement that she would restore the law “as it existed before the instant majority began mangling it,"post at 339 n 13 (emphasis added), one is naturally tempted to re-inquire, see Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 223-228 (2007) (Markman, J., concurring), whether the ongoing dispute *323 between the majority and Justice Kelly over overrulings of precedent truly concerns attitudes toward stare decisis or merely attitudes toward particular previous decisions of this Court. As the accompanying chart to my concurrence in Rowland demonstrates, the majority in many of its ovemilings of precedent also restored the law “as it existed” before the overruled precedent. Apparently, precedents can be disregarded only when Justice Kelly believes that the law has been “mangled,” not when other justices believe this.