KELLY, J.
(dissenting). With this case, the majority continues its unprecedented crusade to dismantle Michigan’s historic double jeopardy jurisprudence.[1] I dissent.
*255 I agree with Justice CAVANAGH that the majority misapplies Blockburger v United States[2] in this case by failing to account for the unique properties of compound offenses. I write separately because I continue to adhere to the principles set forth in my dissent in People v Smith.[3] As I explained in Smith, People v Robideau[4] provided the appropriate protection against multiple punishments in Michigan. People v Wilder[5] held that multiple convictions for felony murder and the predicate felony violate the Double Jeopardy Clause of the Michigan Constitution.[6] That holding is consistent with the result dictated by Robideau. Accordingly, I would retain Wilder's holding. I would affirm the judgment of the Court of Appeals vacating defendant’s first-degree criminal sexual conduct conviction.
THE MULTIPLE-PUNISHMENTS STRAND OF DOUBLE JEOPARDY JURISPRUDENCE
The Double Jeopardy Clause of the Michigan Constitution provides that “No person shall be subject for the same offense to be twice put in jeopardy.”[7] The Double Jeopardy Clause of the United States Constitution similarly provides that “No person shall be ... subject for the same offence to be twice put in jeopardy of life or *256 limb .. . .”[8] The federal Double Jeopardy Clause is applicable to actions by the states.[9]
As I stated in Smith-. “The Double Jeopardy Clause primarily offers three protections: it protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.”[10]
This case concerns the third double jeopardy protection: protection from multiple punishments for the same offense. The multiple-punishments strand of double jeopardy jurisprudence protects a defendant from the imposition of greater punishment than the Legislature intended.[11] Accordingly, the question whether a particular punishment is an impermissible “multiple” punishment can be determined only by ascertaining legislative intent.[12]
THIS COURT’S DECISION IN PEOPLE V WILDER
In Wilder, this Court addressed whether the defendant’s right not to be subjected to multiple punishments for the same offense was violated. The defendant had been convicted and sentenced for both first-degree felony murder and the predicate felony of armed robbery.[13] As a matter of state constitutional law, Wilder held that the conviction for the predicate felony and felony murder violated the prohibition against double *257 jeopardy.[14] In so holding, Wilder focused on the facts necessary for conviction.[15] The Court reasoned that the predicate felony was a lesser included offense of first-degree felony murder because first-degree felony murder could not have been committed without necessarily committing the predicate felony.[16] The Wilder Court observed that its decision was “fundamentally” consistent with federal authority.[17]
The Blockburger “same elements” test[18] adopted by the majority is only one means of ascertaining legislative intent.[19] As a rule of statutory construction, the same-elements test is not controlling “where, for example, there is a clear indication of contrary legislative intent.”[20] In Wilder, this Court recognized that the basic Blockburger same-elements analysis was inadequate to protect against multiple punishments when dealing with compound crimes. Thus, as Justice CAVANAGH has thoroughly and persuasively explained, Wilder adopted what is essentially a modified version of the same-elements test applicable to compound crimes. Justice CAVANAGH’s analysis makes clear that this approach is fundamentally consistent with federal authority.[21]
*258 THIS COURT’S DECISION IN PEOPLE V ROBIDEAU
This Court addressed the multiple-punishment strand of Michigan’s Double Jeopardy Clause in 1984 when it decided Robideau [22] It explicitly rejected use of the Blockburger test[23] and reasoned that, although Blockburger’s “creation of a presumption may make a court’s task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test.”[24] Instead, this Court used the traditional means of determining legislative intent: the subject, language, and history of the statutes.[25]
In 2007, a majority of the Court used Smith to overrule Robideau.[26]1 dissented from that decision.[27]1 *259 continue to believe that Robideau was correctly decided for the reasons expressed in my dissenting opinion in Smith:
In Robideau, this Court exhaustively reviewed federal caselaw concerning double jeopardy. Robideau, 419 Mich at 472-480. After concluding that federal jurisprudence offered no concrete guidance, this Court exhaustively reviewed Michigan caselaw concerning Michigan’s Double Jeopardy Clause. Id. at 480-484. Similarly, this Court found that Michigan’s double jeopardy analysis had not been consistent. Id. at 484.
This Court noted that it had concluded in White[28] that the transactional approach was the correct standard to use with regard to successive prosecutions. Id. at 485. However, because different interests were involved, a different standard was needed for cases involving multiple punishments. Id. Accordingly, after conducting an extensive caselaw analysis, this Court explicitly rejected the Blockburger test, preferring instead traditional means of determining the intent of the Legislature: the subject, language, and history of the statutes. Id. at 486.
Robideau was based on the Michigan Constitution and Michigan caselaw. The test in Robideau adequately safeguards a Michigan citizen’s right to be free from multiple punishments for the same offense. As noted in Robideau, when multiple punishments are involved, the Double Jeopardy Clause is a restraint on the prosecution and the courts, not on the Legislature. Id. at 469. The test in Robideau ensures that the defendant does not receive more punishment than intended by the Legislature. Accordingly, it adequately protects the double jeopardy rights of Michigan citizens.
Moreover, the Robideau Court was free to use its own preferred methods of ascertaining judicial [sic: legislative] intent. As noted repeatedly throughout Robideau, the *260 Blockburger test is simply a method for determining legislative intent. Robideau, 419 Mich at 473, 478, citing Gore v United States, 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958) (stressing that Blockburger was decided as a matter of legislative intent), and Albernaz, 450 US at 338 (noting that the Blockburger test was merely a means to determine legislative intent and that the presumption created by the Blockburger test could be rebutted by a clear indication of legislative intent to the contrary).
I believe this is the proper lens through which to view Blockburger: It is simply one of many methods by which a court can discern the Legislature’s intent. It is not a definitive test that should, or could, be used in every case. Indeed, as noted by this Court in Robideau, “it would be quite contrary to established principles of federalism for the United States Supreme Court to impose on the states the method by which they must interpret the actions of their own legislatures.” Robideau, 419 Mich at 486. Accordingly, the Robideau Court was within its authority to reject the Blockburger test and instead fashion a test that properly reflected the protections of the Michigan Constitution.
The majority believes that the constitution’s ratifiers intended our double jeopardy provision to be construed consistently with the interpretation given the Fifth Amendment by federal courts at the time of ratification. I disagree. As I noted in my dissent in Davis, the sole concern in revisiting the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is sworn, as our courts had interpreted. Davis, 472 Mich at 181 (Kelly, J., dissenting).
In Davis, I also rejected the majority’s claim that the people of Michigan intended to adopt the federal interpretation of the Double Jeopardy Clause. Id. Specifically, I did not agree with the majority that the ratifiers knew how the United States Supreme Court had interpreted the federal Double Jeopardy Clause and that they accepted it. Id. I did not agree that the ratifiers were willing to allow the federal government to interpret our constitution for us. Id. I continue to believe that my analysis in Davis was correct. Therefore, I continue to reject the majority’s presumption *261 that the voters of our state intended that Michigan’s Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted.
The majority overturns Robideau also in the belief that the Michigan Constitution does not afford greater protections than does the Fifth Amendment of the United States Constitution. As an initial matter, I would note that the Robideau Court did not expressly base its decision on this assertion. Regardless, this Court has, for decades, determined that our constitutional prohibition against double jeopardy affords greater protection than does the Fifth Amendment. See, e.g., Robideau, 419 Mich at 507 n 5 (CAVANAGH, J., dissenting), citing People v Wakeford, 418 Mich 95, 105 n 9; 341 NW2d 68 (1983), People v Carter, 415 Mich 558, 582-584; 330 NW2d 314 (1982), Wilder, 411 Mich at 343-349, People v Jankowski, 408 Mich 79, 91-92, 96; 289 NW2d 674 (1980), and White. Accordingly, for the reasons I have stated, I continue to believe Robideau was correctly decided.[29]
THE RESULT REACHED IN WILDER IS NOT AT ODDS WITH ROBIDEAU
Robideau noted that Wilder's analysis did not expressly turn on legislative intent.[30] The majority stretches this criticism to argue that Robideau impliedly overruled Wilder. I disagree. In fact, Robideau emphasized that application of its principles to earlier double jeopardy decisions of this Court was unlikely to yield different results.[31] Robideau only disavowed prior multiple-punishment cases to the extent that those decisions suggested that the prohibition against double jeopardy operates as a substantive limitation on the Legislature.[32] The result reached in Wilder is consistent *262 with the analysis dictated by Robideau. Using the traditional means of discerning legislative intent, I conclude that the Legislature did not intend to impose multiple punishments for first-degree felony murder and the predicate felony.
The starting point for determining legislative intent is the text of the statute.[33] Here, the felony-murder statute contains no language indicating an intent to permit multiple punishments.[34]
“A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature.”[35] In Robideau, this Court noted that first-degree criminal sexual conduct and the predicate crimes of robbery and kidnapping carry the same penalties. This demonstrates, the Court reasoned, that the Legislature intended the crimes to be punished separately.[36] Robideau explained that this analysis is consistent with the result reached in Wilder:
Since felony murder is punishable by a mandatory life sentence, while the predicate felonies are punishable by no more than a term of years up to life, it may be inferred that the Legislature intended to punish a defendant only once for committing both crimes. While someone in the process of committing a predicate felony has a real disincentive to commit murder (mandatory life) even absent the threat of dual convictions, the same person, assuming the predicate felony carries an up-to-life maximum- penalty, would have no such disincentive to commit criminal sexual conduct unless dual convictions are imposed.[37]
*263 Thus, the sanctions authorized by the Legislature for felony murder and the predicate felonies support a conclusion that the Legislature intended to punish a defendant only once.
It is true that prohibiting felony murder and prohibiting the predicate felonies generally protect different social norms. This raises an inference of a legislative intent to permit multiple punishments.[38] However, this inference is not conclusive evidence of legislative intent in light of the contrary inferences raised by the statutory language and authorized punishments.
As Justice RYAN stated in his concurring opinion in Wilder, the Double Jeopardy Clause works “as a particularized version of the rule of lenity.”[39] This accords with Robideau’s holding that if “no conclusive evidence of legislative intent can be discerned, the rule of lenity requires the conclusion that separate punishments were not intended.”[40] No conclusive evidence can be discerned of the Legislature’s intent to permit convictions for both felony murder and the predicate felony. Hence, the rule of lenity requires the conclusion that separate convictions were not intended.
The prosecution has suggested that the rule of lenity must be abandoned in light of the Legislature’s adoption of MCL 750.2, which states:
The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.
*264 It is not clear that the Legislature can dictate a rule of statutory construction to this Court. However, that issue need not be resolved here. This statutory rule aims to ensure that courts construe the criminal code in accordance with the Legislature’s intent. If the felony-murder statute is construed according to the fair import of its terms, we must conclude that it does not permit multiple punishments. It contains no language evidencing a legislative intent to permit multiple punishments.
Moreover, construing the felony-murder statute to prohibit multiple punishments promotes justice by ensuring that offenders are not subjected to multiple punishments for the same offense. This construction also conforms to the law’s objective of ensuring that those who commit felony murder are severely punished. The trial judge must sentence a defendant to a mandatory term of imprisonment for life when a defendant is convicted of felony murder. This is the most severe punishment permitted under Michigan law. The result reached in Wilder is consistent with the analysis set forth in Robideau and with MCL 750.2. The Legislature did not intend to impose multiple punishments for first-degree felony murder and the predicate felony.[41]
*265 CONCLUSION
I dissented from the majority’s decision to overrule Robideau because Robideau provided the appropriate protection against multiple punishments in Michigan. Today, I dissent from the majority’s decision to overrule Wilder’s holding that convictions for both felony murder and the predicate felony violate the Double Jeopardy Clause of the Michigan Constitution. The result reached in Wilder is consistent with the result reached under the analysis set forth in Robideau.[42] No conclusive evidence can be discerned that the Legislature intended to permit convictions of both felony murder and the predicate felony. The rule of lenity requires the conclusion that separate convictions were not intended. I would affirm the judgment of the Court of Appeals.

 See People v Smith, 478 Mich 292, 336-340; 733 NW2d 351 (2007) (Kelly, J., dissenting). As I explained in Smith, “there are few areas of the law in which the current Michigan Supreme Court majority has altered state law more than double jeopardy jurisprudence.” Id. at 336. The justices who constitute the majority in this case are the justices who chipped away at the protections afforded by the Double Jeopardy Clause *255 of the Michigan Constitution in Smith, supra at 324, People v Davis, 472 Mich 156, 169; 695 NW2d 45 (2005), and People v Nutt, 469 Mich 565, 596; 677 NW2d 1 (2004).

 Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

 Smith, supra at 331-347 (Kelly, J., dissenting).

 People v Robideau, 419 Mich 458; 355 NW2d 592 (1984), overruled by Smith, supra at 315.

 People v Wilder, 411 Mich 328; 308 NW2d 112 (1981).

 Const 1963, art 1, § 15.

 Id.

 US Const, Am V

 Benton v Maryland, 395 US 784, 795-796; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

 Smith, supra at 335 (Kelly, J., dissenting).

 Robideau, supra at 485.

 Id. at 469.

 Wilder, supra at 336.

 Id. at 347.

 Id. at 343-346.

 Id. at 364.

 Id. at 348-352.

 Blockburger, supra at 304.

 Ante at 252 (Cavanagh, J., dissenting).

 Albernaz v United States, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981).

 See Whalen v United States, 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980). In Whalen, the United States Supreme Court addressed whether convictions for both rape and the killing of the victim in the perpetration of the rape violated the defendant’s double jeopardy rights. Id. at 685-686. The Court indicated that it was applying the Blockburger *258 test. Id. at 693-694. However, Whalen did not focus on the abstract elements of the rape and felony-murder statutes. Id. Rather, the Court considered the elements necessary to prove felony murder and compared them with those necessary to prove the predicate offense. Id. at 694.
As I explain later, the federal double jeopardy analysis does not control how Michigan interprets its own constitutional prohibition against double jeopardy. Nevertheless, Whalen is important because it highlights the fact that the basic Blockburger same-elements analysis is inadequate as pertains to compound offenses. If it is to be used, it should be applied as it was in Whalen. The elements necessary to prove felony murder must be compared with the elements necessary to prove the predicate offense. The Court must then consider any other indicators of legislative intent. By failing to adopt this approach, the majority misapplies Blockburger in the context of a compound offense.
The majority claims to be “perplexed” by my assertion that Wilder is consistent with federal authority. Ante at 230 n 4. Yet Wilder clearly states that its decision is “fundamentally consistent with existing authority of the United States Supreme Court.” Wilder, supra at 348-349.

 Robideau, supra at 458.

 Id. at 485-486.

 Id. at 486.

 Id.

 Smith, supra at 315.

 Id. at 331-347 (Kelly, J., dissenting).

 People v White, 390 Mich 245; 212 NW2d 222 (1973), overruled by Nutt, supra at 591.

 Smith, supra at 341-344 (Kelly, J., dissenting).

 Robideau, supra at 482.

 Id. at 488 n 7.

 Id. at 485.

 People v Morson, 471 Mich 248, 255; 685 NW2d 203 (2004).

 See MCL 750.316.

 Robideau, supra at 487.

 Id. at 488-489.

 Id. at 489 n 8 (emphasis in original).

 Id. at 487.

 Wilder, supra at 364 (Ryan, J., concurring).

 Robideau, supra at 488.

 The majority proclaims that it cannot understand how the result reached in Wilder is consistent with Robideau. The consistency in the two hinges on the distinction between first-degree criminal sexual conduct and first-degree felony murder. Robideau examined the former, whereas Wilder examined the latter. Applying the double jeopardy analysis set forth in Robideau to these different statutes yields different results. Robideau held that multiple punishments are permissible for first-degree criminal sexual conduct and the predicate felony. This holding was largely premised on the fact that first-degree criminal sexual conduct and its predicate crimes carry the same penalties. Robideau, supra at 488-490. As Robideau explained, felony murder is distinguishable because it is punishable by a mandatory life sentence, whereas its predicate felonies are punishable by lesser sanctions. Id. at 489 n 8. This leads to different *265 inferences regarding legislative intent. As any reader of Robideau can see, it is the majority that fails to acknowledge what that decision actually says.
Also contrary to the majority’s assertion, I do not suggest that the only way to discern whether the Legislature intended to permit multiple punishments is to find explicit language in the statute. Legislative intent must be discerned from the subject and history of the statute as well as from its language.

 I do not read Wilder as suggesting that the prohibition against double jeopardy operates as a substantive limitation on the Legislature. Whether a particular punishment is an impermissible “multiple” punishment can only be determined by ascertaining legislative intent. Therefore, the Legislature may amend the felony-murder statute to permit multiple punishments for felony murder and the predicate felonies.