COURT OF APPEALS

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| | October 28, 2014 |
| Plaintiff-Appellee, | |
| v | No. 317500 |
| | Houghton Circuit Court |
| JESSICA LEE GOSTLIN, | LC No. 2012-002621-FH |
| Defendant-Appellant. | |

Before: MURPHY, C.J., and SAWYER and M.J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right her convictions on two counts of welfare fraud under MCL 400.60(2)(a) (failure to inform about the complete circumstances in regard to income) and MCL 400.60(2)(c) (failure to inform about information concerning changes in circumstances that would decrease need for relief). She was given two years' probation and placed on an electronic monitoring device for four months. Defendant was also ordered to pay restitution in the amount of $18,054. We affirm.

This case stems from allegations of welfare fraud occurring from April 2007 to December 2009. Defendant first applied for public assistance (food and medical) in 2005. At that time, she was the sole proprietor of two home-based businesses, Superior Counseling and Arbonne. Defendant, who has a degree in clinical psychology, provided counseling services through the operation of Superior Counseling. Copper Country Mental Health (CCMH) contracted annually with Superior Counseling for counseling services in emergency situations, which were provided by defendant.[1] Superior Counseling's only client or customer was CCMH. With respect to Arbonne, defendant acted as an independent sales consultant, teaching customers about skin care and selling health and wellness products. Defendant testified that she was paid by CCMH, through the conduit of Superior Counseling, on a monthly basis, and that she was also paid on a monthly basis by Arbonne. On annual welfare applications and semi-annual contact reports, defendant identified Superior Counseling and Arbonne as sources of income

---

[1] Defendant had actually been directly employed by CCMH for six weeks back in 2000 before resigning. Thereafter, she continued to provide services to CCMH on a contractual basis via Superior Counseling.

until a point in 2007 when defendant started listing only Arbonne as an income source, even though she was still operating Superior Counseling and obtaining monthly payments from CCMH. Defendant testified that she was instructed by a Department of Human Services (DHS) employee in 2006 to start combining her income when reporting income from Superior Counseling and Arbonne on future applications and reports. It was defendant's position that, thereafter, she began listing only Arbonne as her source of income; however, she was nevertheless combining her income from both Arbonne and Superior Counseling when reporting *the amount* of income, as reduced by alleged costs and expenses associated with running the businesses.

A recoupment specialist for DHS testified that, as to the period at issue, defendant failed to report any income whatsoever from Superior Counseling; none of the CCMH monthly payments were reported according to the specialist. The recoupment specialist made the assumption that the reported income identified by defendant as coming from Arbonne was defendant's actual Arbonne income, which the specialist never verified or confirmed, and then added the alleged unreported income from Superior Counseling, as derived through her investigation, resulting in a finding that defendant was not qualified for all of the public assistance that she had received. The specialist concluded that defendant was overpaid $20,663 in food assistance.[2] She testified that defendant received monthly assistance ranging from a low of $563 in April 2007 to $817 in December 2009, with the amounts incrementally increasing, for the most part, from the start of the 33-month period in dispute until its completion. The recoupment specialist claimed that had defendant's income been properly reported, she would not have been entitled to any assistance for 25 of the months in the relevant period. According to the specialist, with respect to the remaining eight months, defendant was entitled to considerably less than the amounts received for each of those months given defendant's actual income.

In her calculations, the recoupment specialist used the dollar amounts paid by CCMH to Superior Counseling or defendant, absent consideration of any deductions for costs and expenses. According to the specialist, had defendant reported income from Superior Counseling during the pertinent timeframe, it would have been determined whether she was self-employed, and if so, defendant would have had to verify "her actual expenses . . . or the case worker would have given her a base allowable deduction of twenty-five percent."[3] She later explained that a self-employed person would be entitled to a deduction for certain actual expenses or a standard deduction of twenty-five percent, whichever was greater. The recoupment specialist testified in regards to the gross income received by defendant through Superior Counseling from CCMH for each month, beginning with April 2007 and ending with December 2009. The monthly gross

---

[2] A witness employed by the Office of Inspector General for DHS testified that defendant also received $7,404 in Medicaid benefits to which she was not entitled based on his calculations that were predicated on the numbers supplied by the recoupment specialist.

[3] The recoupment specialist testified that one could not deduct monies directed to retirement accounts or used for meals, and that "you can't use entertainment, you can't use depreciation on some things."

income amounts ranged from a low of $1,445 to a high of $4,104.  A 1099 tax form reflected that CCMH paid out $28,648 in 2009 for counseling services provided by defendant.

The recoupment specialist stated, consistent with our review of the document, that on an annual public assistance application dated August 30, 2006, Superior Counseling was identified by defendant, along with Arbonne, but the income amount, $1,700 gross and $1,200 after taxes, had been lumped together.[4]  In a semi-annual contact report (six-month review) dated February 2007, defendant indicated that her income came from Arbonne; Superior Counseling was not mentioned.[5]  In a March 2007 eligibility notice from DHS, defendant was instructed that "if your household's *gross income* exceeds $2,535 at the end of the month, report this to your specialist within 10 days of the next month."  (Emphasis added.)  The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling *alone* for the month of March 2007 was $2,370, and defendant testified that she received monthly checks from Arbonne that ranged from a low of $400 to a high of about $3,500.  Defendant, however, never alerted DHS in April 2007 about March's gross income.  We also note that defendant had $3,067 in gross income from Superior Counseling alone for June 2007, but defendant never reported this information.  Defendant acknowledged that she knew the difference between gross and net income and that gross income did not take into consideration any deductions.

With respect to an annual public assistance application dated September 6, 2007, the recoupment specialist testified, consistent with our review of the document, that defendant had indicated that she received $2,000 per month in gross income for sales work (self-employment section of application).  And on the next page of the application (earned income section), she identified Superior Counseling as her employer, but then scribbled it out, though still legible, while again noting that her monthly pay before taxes was $2,000.  Defendant had an average monthly gross income of $2,274 for the previous three months relative to Superior Counseling alone.  In an eligibility notice from DHS dated September 18, 2007, defendant was instructed that "if your household's gross income exceeds $2,535 at the end of the month, report this to your specialist within 10 days of the next month."  We note that defendant had $3,325 in gross income from Superior Counseling alone for November 2007, absent any consideration of income from Arbonne, but defendant never reported this information.

---

[4] The application form was structured with a self-employment section, where gross monthly income could be reported, and an earned income section, which was clearly intended to be for income other than amounts generated through self-employment.  In the self-employment section of the 2006 application, defendant listed herself as self-employed, with the type of business listed as "Health/Wellness."  It was in the earned income section of the application that defendant identified Superior Counseling and Arbonne as her employers and reported her income.

[5] The semi-annual contact report form had a section for household income from working, where defendant reported the information mentioned, and a section for household self-employment income, which defendant left entirely blank.  The self-employment income section had a space to report average monthly income and stated that proof of income and expenses must be provided; the general household income section had no space to list income.

In a semi-annual contact report for March 2008, defendant indicated that her income came solely from Arbonne and that her average monthly income was $2,000.[6] In an eligibility notice dated March 24, 2008, defendant was directed that "if your household's gross income exceeds $2,615 at the end of the month, report this to your specialist within 10 days of the next month." The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling alone for the month of March 2008 was $1,888, and, once again, defendant testified that she received monthly checks from Arbonne that ranged from a low of $400 to a high of about $3,500. Additionally, defendant's 2008 tax return reflected that she had $39,269 in gross income from Arbonne for the year, which would average out to $3,272 per month. Defendant, however, did not report March's gross income to DHS. Defendant admitted that she never reported having more than $2,615 in gross monthly income even though there were months in which she had gross income substantially in excess of $2,615. In an eligibility notice dated April 30, 2008, defendant was advised that "if your household's gross income exceeds $2,992 at the end of the month, report this to your specialist within 10 days of the next month." The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling alone for the month of April 2008 was $2,418 and, when considering the 2008 tax return and defendant's testimony regarding Arbonne, it appeared that she easily exceeded $2,992 in monthly gross income. Defendant, however, did not report April's gross income to DHS.

In an annual public assistance application dated September 9, 2008, defendant reported self-employment income from Arbonne only, with a gross monthly income of $2,100 and, contrary to defendant's general position, "$0" in self-employment expenses.[7] In an eligibility notice dated September 30, 2008, defendant was directed that "if your household's gross income exceeds $2,992 at the end of the month, report this to your specialist within 10 days of the next month." The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling alone for the month of September 2008 was $1,823, for the month of October 2008 was $3,521, and for the month of November 2008 was $3,571, but defendant never reported this information. In a semi-annual contact report dated February 2009, defendant indicated that her income came solely from Arbonne but no income amount whatsoever was reported, given that defendant filled out the general household income section and, as done in the past, left the household self-employment income section entirely blank. In an eligibility notice dated March 5, 2009, defendant was directed that "if your household's gross income exceeds $3,077 at the end of the month, report this to your specialist within 10 days of the next month." The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling alone for the month of May 2009 was $3,542, but defendant never reported this information.

---

[6] This time, defendant reported the information in the household self-employment income section and not the general household income section.

[7] The previous annual application forms did not have a space to report self-employment expenses.

In a redetermination form dated August 2009, defendant reported Arbonne alone as her source of income, and a space for gross income before deductions was left blank. The recoupment specialist testified, and it is undisputed, that defendant's gross income from Superior Counseling alone for the finals months of 2009 were as follows: $1,858 in August; $2,623 in September; $4,104 in October; $2,475 in November; and $2,426 in December.

The recoupment specialist testified that she treated defendant as an employee of CCMH and not as self-employed because she did not have information that defendant was self-employed through Superior Counseling for the period at issue. The recoupment specialist did testify that, assuming defendant had been self-employed and giving her the benefit of the standard twenty-five percent deduction, defendant still received $18,054 more in welfare benefits than she was entitled to receive, which amount evidently formed the basis of the court's ultimate restitution order. In a supporting document generated by the recoupment specialist relative to the twenty-five percent deduction, she noted that defendant should have received zero benefits in 13 of the 33 months at issue and that as to each of the remaining 20 months, defendant was entitled to some benefits, but never as much as she actually received.

Defendant's defense was based on the claim that income amounts reported to DHS reflected combined income from Superior Counseling and Arbonne, minus deductions for costs and expenses. Defendant also maintained that changes or increases in monthly income that the prosecution claimed should have been reported were not necessary to report upon contemplation of the net income received by defendant after making deductions. In support of her position, defendant relied on information in her 2007 through 2009 1040 tax returns, focusing mainly on the 2008 return.[8]

A Schedule C from the 2008 tax return revealed $26,369 in gross income from Superior Counseling, which was consistent with the recoupment specialist's testimony concerning gross income from Superior Counseling in 2008. A second Schedule C from the 2008 tax return revealed, as mentioned earlier, $39,269 in gross income from Arbonne, which averaged out to over $3,000 per month in gross income. Because defendant had listed gross income of $2,000 and then $2,100 covering the entire span of 2008 (amounts from September 2007 and September 2008 annual applications), which amounts the recoupment specialist had attributed solely to Arbonne by way of an assumption, the specialist's calculation of gross income for 2008 was actually lower than defendant's true 2008 gross income. But, defendant argued that the $2,000 and $2,100 amounts represented *net* income after deductions. The 2008 Schedule C relative to Superior Counseling had $9,881 in total deductions for various expenses, leaving a net profit of $16,488. The expenses or deductions included $675 for depreciation and $339 for meals and entertainment, which the recoupment specialist testified could not be considered. There was no testimony regarding the DHS-applicability of other deductions claimed by defendant in the 2008 Schedule C for Superior Counseling, e.g., car and truck expenses, advertising, repairs and

---

[8] While the lower court record contains the 2008 and 2009 1040 tax returns, it appears that only the 2008 tax return was actually admitted into evidence. There was testimony by witnesses regarding the numbers in the tax returns for 2007 through 2009.

maintenance. The 2008 Schedule C relative to Arbonne had $26,857 in total deductions for various expenses, leaving a net profit of $12,412. The expenses or deductions included $2,382 for meals and entertainment, which, again, the recoupment specialist testified could not be considered. There was no testimony regarding the DHS-applicability of other deductions claimed by defendant in the 2008 Schedule C for Arbonne. If one takes the total 2008 net profit for Superior Counseling and Arbonne and adds back in only those deductions that the recoupment specialist testified could not be considered, thereby assuming that all of the other Schedule C deductions were permissible relative to calculating benefits, defendant would have *netted* in 2008 for purposes of the DHS proceedings $32,296, which averages out to $2,691 per month and not the $2,000 to $2,100 monthly net income claimed by defendant in the applications.[9] We also note, as reflected above, that in the September 2007 and September 2008 annual applications, which covered the calendar year of 2008, defendant reported the $2,000 and $2,100 as being her monthly *gross* income, which was entirely inaccurate, and she made no mention of or claim for expenses in the 2007 annual application, while expressly stating that she had zero expenses in the 2008 annual application. Defendant never submitted proofs related to expenses associated with Superior Counseling when submitting applications and paperwork to DHS, and the only paperwork she submitted regarding expenses associated with Arbonne concerned five months in 2009.

The recoupment specialist acknowledged that DHS had defendant's tax returns, received after the tax year covered by the given return, but she explained that DHS relied on the income statements or reports made by applicants and financial information supplied by employers in determining welfare eligibility and generally not tax returns.

MCL 400.60(2) provides in pertinent part:

There is imposed upon every person receiving relief under this act either upon the person's own application or by the person's inclusion, to his or her knowledge, in the application of another the continuing obligation to supply to the department issuing the relief: (a) the complete circumstances in regard to the person's income from employment or from any other source . . . [and] (c) information concerning changes in the person's circumstances . . . which would decrease the need for relief[.] . . . Any person who shall neglect or refuse to submit to the department issuing relief the information required by this section, . . . if the amount of relief granted as a result of the neglect or refusal is $500.00 or more, is guilty of a felony[.]

The prosecution's theory of the case was that, with respect to the period of April 2007 to December 2009, defendant violated MCL 400.60(2)(a) when she failed to accurately identify the full amount of her income in the annual public assistance applications and semi-annual contact reports and violated MCL 400.60(2)(c) when she failed to report to DHS relevant increases in

---

[9] The 2008 tax return also references a $1,717 net loss for a childcare business operated by defendant's husband; they filed a joint return. But even if this amount is taken into consideration, there still remained an average monthly net profit of $2,548 for 2008.

her monthly income as demanded in the eligibility notices sent to defendant. The jury convicted defendant on both counts.

On appeal, defendant first argues that her two convictions violated the constitutional prohibition against double jeopardy. We disagree. "Both the United States and Michigan Constitutions protect an individual 'from being placed twice in jeopardy for the same offense.'" *People v Franklin*, 298 Mich App 539, 546; 828 NW2d 61 (2012), citing US Const, Am V and Const 1963, art 1, § 15. The double jeopardy bar prevents, in part, "multiple punishments for the same offense." *Franklin*, 298 Mich App at 546. In *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), the Michigan Supreme Court ruled that the "same elements" test enunciated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 2d 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." "The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense." *People v Baker*, 288 Mich App 378, 382; 792 NW2d 420 (2010), citing *Smith*, 478 Mich at 307, and *People v Nutt*, 469 Mich 565, 576; 677 NW2d 1 (2004). "If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved." *Baker*, 288 Mich App at 382; see also *Smith*, 478 Mich at 296 ("Because each of the crimes for which defendant here was convicted, first-degree felony murder and armed robbery, has an element that the other does not, they are not the 'same offense' and, therefore, defendant may be punished for each.").

Here, defendant was convicted of violating MCL 400.60(2)(a), which punishes a failure to disclose pertinent circumstances regarding income, and MCL 400.60(2)(c), which punishes a failure to disclose a change in circumstances that would decrease the need for relief. Each subsection or offense requires proof of an element that the other does not, where only § 60(2)(a) requires proof that the concealed circumstances specifically pertain to income, while only § 60(2)(c) requires proof that the concealed information pertain to a change in circumstances that would decrease the need for relief. The jury was instructed consistent with these different elements.[10] Defendant's complaint that the prosecution was able to prove both offenses on the basis of the same facts is unavailing, considering that the *Blockburger* test focuses only on "the abstract legal elements," *People v Ream*, 481 Mich 223, 239-240; 750 NW2d 536 (2008), and that a substantial overlap as to proofs is irrelevant, *Baker*, 288 Mich App at 382.

Moreover, given that the offenses concerned separate and distinct criminal transactions, i.e., failure to report pertinent increases in income after receipt of eligibility notices and failure to accurately report income in annual applications and semi-annual contact reports, double jeopardy protections were simply not violated. *People v Collins*, 298 Mich App 458, 464; 828 NW2d 392 (2012). In sum, there was no double jeopardy violation.

Next, defendant argues that her convictions were against the great weight of the evidence. A new trial may be granted if a verdict is against the great weight of the evidence. *People v Brantley*, 296 Mich App 546, 553; 823 NW2d 290 (2012). The determination of whether a

---

[10] We note that defendant expressed satisfaction with the jury instructions at trial.

verdict is against the great weight of the evidence requires review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998). A verdict is against the great weight of the evidence if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). With respect to whether a new trial is warranted on the basis that the verdict was against the great weight of the evidence, "[c]onflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Absent exceptional circumstances, the issue of witness credibility and the weighing of conflicting testimony should be left to the trier of fact. *Lemmon*, 456 Mich at 642-643. The exceptional circumstances recognized in *Lemmon* are as follows: (1) the testimony contradicts indisputable physical facts or laws; (2) the testimony is patently incredible or defies physical realities; (3) the testimony is so inherently implausible that it could not be believed by a reasonable juror; or (4) the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies. *Id*. at 643-644.

Defendant argues that the evidence presented at trial indisputably established that DHS knew that she received income from both Superior Counseling and Arbonne and that DHS knew that she had lumped the income from these businesses together for purposes of reporting income; indeed, DHS had indisputably instructed her to do so. This argument entirely misses the mark and does not provide a relevant ground to reverse. Assuming that DHS was fully cognizant of the fact that the two businesses generated income for defendant and that she combined the two incomes into a single income amount for purposes of reporting income in the applications and reports, it did not translate to DHS being aware of the egregious underreporting of total income and the failure to report pertinent increases in income, as fully set forth above in this opinion.

Defendant further argues that the prosecution failed to present any witnesses to testify as to what defendant's income would have been had DHS utilized the proper deductions, leaving the jury to speculate.[11] It would appear that, in this type of a case generally, the prosecution would ordinarily have to prove the amount of welfare benefits actually received by a defendant caused by deceit, as well as proving the amount of benefits that said defendant was legally entitled to, if any, had there been no deceit, considering the need to establish that the defendant received at least $500 in benefits beyond that allowable under law. The problem here, however, with respect to defendant's entire argument concerning deductions for expenses, is that she did not claim any such expenses when submitting applications and reports, let alone submit supporting proofs as directed, with the exception of some ultimately irrelevant 2009 Arbonne expenses. In the September 2008 annual application, defendant even expressly claimed "$0" in self-employment expenses. And the income reported in the 2007 and 2008 annual applications was identified as gross income, not net income. Despite these shortcomings, defendant nonetheless obtained the benefit of a twenty-five percent deduction; however, the testimony established that she still received an overpayment of benefits in the amount of $18,054. Finally, as reflected in our computations above relative to the 2008 tax return and contemplation of the

---

[11] This appears to be more of a sufficiency argument than a great-weight argument.

Schedule C deductions for expenses, the net income was still more than that claimed by defendant in her DHS submissions.  The guilty verdict was not against the great weight of the evidence, nor was the evidence insufficient to support the convictions.  Reversal is unwarranted.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly