# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES EDWARD WILSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
September 13, 2018

No. 339774; 342110
Saginaw Circuit Court
LC No. 16-042872-FC

---

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.529; MCL 750.157a; and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to (1) concurrent prison terms of 35 to 60 years for the murder conviction and 225 to 600 months for the robbery and conspiracy convictions and (2) concurrent two-year terms for each of the felony-firearm convictions, to be served consecutively to their corresponding felony sentences. Defendant appeals as of right.[1] We affirm his convictions but remand for resentencing.

Defendant's convictions were a result of his aiding and abetting Jason Wrenn, who used a gun to rob and kill Laquavis Cooper. A third man, Jamal Reid, was present during the planning and preparation for the crimes and after the crimes, and he provided incriminating testimony at trial.

Defendant first argues that the trial court erred by denying his motion for a new trial based on the failure to have a circuit court arraignment. A trial court may grant a new trial " 'on any ground that would support appellate reversal of the conviction or because it believes that the

---

[1] Defendant was resentenced after the parties stipulated that resentencing was appropriate. In Docket No. 339774, he appeals as of right from the original judgment of sentence. In Docket No. 342110, he appeals as of right from the judgment of sentence imposed after resentencing. This Court consolidated the two appeals. *People v Charles Edward Wilson, Jr*, unpublished order of the Court of Appeals, entered February 8, 2018 (Docket Nos. 339774 and 342110).

verdict has resulted in a miscarriage of justice.' " *People v McEwan*, 214 Mich App 690, 697; 543 NW2d 367 (1995), quoting MCR 6.431(B).  This Court reviews for an abuse of discretion a trial court's decision regarding a motion for a new trial.  *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012).  "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes."  *Id*. (quotation marks and citations omitted).  This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules.  *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

Following a district court preliminary examination in which a defendant is bound over to circuit court, the circuit court is "required to conduct an arraignment on the information at which the court would notify defendant of the charges against him and allow him to enter a plea." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).  There is no record or claim that defendant was arraigned in circuit court or that he waived arraignment after he was bound over to the circuit court from the district court.  However, MCR 6.113(E) provides:

> A circuit court may submit to the State Court Administrator pursuant to MCR 8.112(B) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the defendant a copy of the information and any notice of intent to seek an enhanced sentence, as provided in MCR 6.112(F).

The Saginaw Circuit Court eliminated circuit court arraignments with Local Administrative Order 2011-03C, which requires the prosecutor to serve a copy of the information and any intent to seek an enhanced sentenced on the defendant's attorney and to provide a proof of service to the court, and requires the attorney to deliver a copy of the information to the defendant.  Thus, an arraignment was not required.  The lower-court record contains a proof of service indicating that "the Circuit Court Information" was served on defendant's attorney.  Contrary to defendant's assertion, the record shows that he was represented by counsel at that time.  The information set forth the charges against defendant and provided notice that the prosecutor was seeking an enhanced sentence.  Thus, the prosecutor complied with legal requirements.

Defendant appears to be arguing that his attorney failed to provide him with a copy of the information, but even assuming this is true, defendant would have to demonstrate that he was prejudiced in order "to merit relief."  MCR 6.113(A); *Nix*, 301 Mich App at 208.[2]  Defendant argues that he was prejudiced by not having information that the prosecutor was seeking enhanced sentencing; he claims he would have disputed the information.  However, at resentencing, defendant was not sentenced as an habitual offender because the parties stipulated that habitual-offender status was not applicable.  Reversal is not warranted.[3]

---

[2] We note that defendant has not alleged ineffective assistance of counsel.

[3] " '[T]he purpose of an arraignment is to provide formal notice of the charge against the accused.' "  *Nix*, 301 Mich App at 208, quoting *People v Waclawski*, 286 Mich App 634, 704; 780 NW2d 321 (2009).  On September 12, 2016, defendant had his preliminary examination at

Next, defendant argues that he was twice punished for the same crime in violation of his constitutional protections against double jeopardy. "A double-jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

The Michigan Constitution and the Fifth Amendment of the United States Constitution protect a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ." US Const, Am V; see also Const 1963, art 1, § 15. Michigan's double-jeopardy provision was intended to be "construed consistently with Michigan precedent and the Fifth Amendment." *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010) (quotation marks and citation omitted). The prohibition against double jeopardy provides three related protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004).

Defendant argues that he was twice punished for the same offense when he was sentenced for both felony murder and armed robbery. Thus, defendant's argument involves the third protection, or the "multiple punishments" protection. *Ream*, 481 Mich at 227. The determination of whether an offense was the "same offense" for purposes of double-jeopardy prohibitions is made by applying the "same element" test found in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). See *Nutt*, 469 Mich at 576-577. The test to determine if the same facts that violate two distinct statutory provisions are two offenses or only one "is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 US at 304. "[M]ultiple punishments are authorized if each statute requires proof of an additional fact that the other does not . . . ." *Ream*, 481 Mich at 228 (quotation marks and citations omitted).

"The elements of first-degree felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)].' " *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) (quotation marks and citations omitted). "The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *Id*. at 319.

Defendant argues that because the predicate felony of his felony-murder conviction was armed robbery, all the elements of armed robbery were included in felony murder. Thus, defendant argues, he was twice punished for the same offense. However, the *Blockburger* test focuses on the "abstract legal elements" included in the language of the statutory crimes and

---

which he was informed of the charges and bound over to circuit court. Defendant had adequate notice of the charges against him from the district court arraignment, the preliminary examination, and the information that was served on his attorney.

does not depend on "the particular factual occurrence which gives rise to the charges." *Ream*, 481 Mich at 235 (quotation marks and citations omitted). The final element of felony murder is not an armed robbery, but the requirement that the murder occur "while [the perpetrator is] committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)]." *Smith*, 478 Mich at 319 (quotation marks and citations omitted). In the abstract, the predicate felony for the crime of felony murder may be any number of felonies, not necessarily an armed robbery.

"[S]entencing a defendant for both first-degree felony murder and the predicate felony does not violate the 'multiple punishments' strand of the Double Jeopardy Clause if each offense has an element that the other does not." *Ream*, 481 Mich at 240. The crimes of felony murder and armed robbery each have elements the other does not. The killing of a human being is an element of felony murder, but not armed robbery, and larceny is an element of armed robbery, but not felony murder. Thus, there was no double-jeopardy violation. See, generally, *id*. at 241-242. In addition, the Court in *Smith*, 478 Mich at 319, concluded that felony murder and armed robbery are not the same offense for double-jeopardy purposes because each contains a different element from the other: "a homicide and a *mens rea* of malice" for felony murder and "that the defendant took property from a victim's presence or person while armed with a weapon" for an armed robbery.

Next, defendant argues that the evidence was insufficient to support each of his convictions. To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, may be considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *Hardiman*, 466 Mich at 429.

Defendant argues that none of his convictions were supported by the evidence because the conviction on which the other convictions rested, armed robbery, was not supported by the evidence. As noted, "[t]he elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *Smith*, 478 Mich at 319. Defendant was convicted of aiding and abetting Wrenn in the armed robbery of Cooper. Accomplices to a crime may be prosecuted as if they committed the crime under the theory that they aided and abetted. *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006). A conviction under the aiding and abetting theory requires that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *Id*. at 6 (quotation marks and citations omitted).

Defendant argues that he did not intend for Cooper to be robbed with a gun, did not know that Wrenn intended to rob Cooper with a gun, and did not know that Wrenn had a gun. However, the testimony of Reid provided sufficient proof that defendant aided and abetted Wrenn's armed robbery of Cooper. Defendant argues that Reid's testimony was not credible

because he denied defendant's involvement until he reached a plea deal in exchange for his testimony. However, defendant's trial attorney cross-examined Reid and questioned him about his plea deal and previous testimony, and the jury made a determination regarding Reid's credibility. In reviewing the sufficiency of the evidence, this Court " 'is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). It is the role of the jury to determine the credibility of witnesses, *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013), and this Court will not interfere with the trier of fact's role of determining such credibility, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Both Reid and defendant testified that they had knowledge that Cooper was going to provide cash to Reid for driving from Saginaw to Grand Rapids to transport Cooper back to Saginaw. Reid testified that after arriving at Cooper's residence in Grand Rapids, Reid heard Wrenn tell defendant that he was going to take money from Cooper because he had bills to pay. According to Reid, defendant agreed with Wrenn to take Cooper's money by stating, "I'm down," and pounding fists with Wrenn. Reid said that defendant followed Cooper into three stores in order to verify whether he had cashed his check, which he displayed in the vehicle, and expressed disappointment when Cooper was initially unsuccessful. Reid testified that Wrenn requested the gun, which Reid kept under the center console of his car, so he could get the money from Cooper.

At one point, Reid witnessed defendant hand Wrenn his hooded sweatshirt and the gun at Wrenn's request. Reid remembered that defendant called him "soft" when he objected to Wrenn's taking the gun, and that defendant offered to stay with Wrenn but Wrenn told defendant to go wait with Reid at a nearby business. After Wrenn called Reid to ask Reid to pick him up and told Reid and defendant that he had killed Cooper for $120, Reid witnessed Wrenn give defendant $50 and remark, "good lookin.' " Reid recalled that defendant then instructed him to discard the gun and told him to tell the police that defendant was asleep if he was questioned.

Defendant argues that the evidence only demonstrated that he was present with Wrenn and not that he intended or knew that Wrenn intended to rob Cooper with a gun; defendant claims he did not know about the gun. A defendant's "mere presence" is not sufficient to establish that the defendant aided and abetted a crime, even if the defendant was aware that the crime was being committed. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). However, "aiding and abetting" includes any "words or deeds that may support, encourage, or incite the commission of a crime." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992). To determine whether a defendant aided and abetted a crime, the Court may consider the "close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v Turner*, 213 Mich App 558, 568-569; 540 NW2d 728 (1995), overruled in part on other grounds by *People v Mass*, 464 Mich 615, 627-628; 628 NW2d 540 (2001). "The amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime." *People v White*, 147 Mich App 31, 38; 383 NW2d 597 (1985) (quotation marks and citation omitted). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the

defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622.

The evidence and reasonable inferences from the evidence established beyond a reasonable doubt that defendant assisted in planning and carrying out the armed robbery. There was evidence that defendant knew that Cooper had cash, spoke with Wrenn about taking the money from Cooper, and handed the gun to Wrenn. A reasonable inference from this evidence is that defendant and Wrenn intended to rob Cooper by using the gun. A reasonable inference was that the gun defendant handed Wrenn was intended to be used to rob Cooper because that was the plan that had been expressed, and the robbery and murder immediately followed after the gun was provided to Wrenn. There was evidence that defendant offered to stay with Wrenn, presumably to physically participate in the robbery, before Wrenn directed him to wait with Reid. Defendant was in the car that transported Wrenn after the armed robbery, and Wrenn reported that he had killed Cooper for money. There was evidence that Wrenn provided defendant with $50 and complimented him, and a reasonable inference from this evidence is that Wrenn paid defendant for his assistance in robbing Cooper with the gun. Defendant also assisted in attempting to obscure the robbery by instructing Reid to get rid of the gun and asking Reid to lie. Thus, defendant's conviction for aiding and abetting Wrenn in the armed robbery of Cooper was sufficiently supported by the evidence.

Defendant was also convicted of conspiracy to commit armed robbery. For conspiracy, "there must be proof demonstrating that the parties specifically intended to further, promote, advance, or pursue an unlawful objective." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). It is not necessary that each defendant have knowledge of all the ramifications of a criminal conspiracy. *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002). " '[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties.' " *People v Lowery*, 274 Mich App 684, 693; 736 NW2d 586 (2007), quoting *Justice (After Remand)*, 454 Mich at 347.

Reid testified that he witnessed defendant and Wrenn agree that they would rob Cooper. Defendant supplied the gun and a hooded sweatshirt to Wrenn to accomplish the armed robbery. Defendant offered to physically be present during the armed robbery, and, as a reasonable inference, received $50 from Wrenn for his planned participation. Thus, the evidence and reasonable inferences supported a finding that defendant agreed with Wrenn to perform an armed robbery of Cooper.

As previously stated, first-degree felony murder includes the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. *Smith*, 478 Mich at 318-319. Defendant argues that he did not intend to or know that Wrenn intended to kill Cooper. However, minimal circumstantial evidence will suffice to establish a defendant's state of mind, *Kanaan*, 278 Mich App at 622, and a defendant's intent may be inferred "from his words or from the act, means, or the manner employed to commit the offense," *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). Cooper was killed by two gunshots to his head, one of which was fired from 5 to 10 inches from his face. Reid witnessed defendant giving the gun to Wrenn shortly before Wrenn shot Cooper. Because the intent to kill may be inferred from the use of a deadly weapon, a defendant's use of a gun is evidence of malice. See *People v Henderson*, 306 Mich App 1, 11;

854 NW2d 234 (2014). A jury may also infer malice from evidence "that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Stiller*, 242 Mich App 38, 43; 617 NW2d 697 (2000) (quotation marks and citation omitted). The prosecution may show "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (quotation marks and citations omitted).

The evidence demonstrated that Wrenn spoke with defendant about robbing Cooper, took the gun from defendant to use in the robbery, and shot the gun at Cooper at very close range. Wrenn's intent to kill is inferred from Wrenn's use of a gun to rob and shoot Cooper in a way that would cause death. Defendant aided and abetted Wrenn in the murder and by assisting Wrenn with planning and providing a gun to effectuate the plan, defendant "intentionally set in motion a force likely to cause death or great bodily harm," See *Stiller*, 242 Mich App at 43 (quotation marks and citation omitted). Providing a gun to Wrenn, a person he knew was going to rob Cooper because that is what they had discussed, was evidence of "the intent to do an act that is in obvious disregard of life-endangering consequences." See *Werner*, 254 Mich App at 531 (quotation marks and citations omitted). Thus, there was sufficient evidence to conclude that defendant acted with malice. The evidence supported defendant's conviction for felony murder beyond a reasonable doubt.

Finally, defendant argues that he should be resentenced because the trial court did not place *any* reasons for its sentence on the record and did not consider age-related factors like those mentioned in *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012). In *Miller, id*. at 470, the Court concluded that "mandatory life-without-parole sentences for juveniles" constitute cruel and unusual punishment in violation of the Eighth Amendment.[4] The Court reasoned that such sentences for juveniles "prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender" because the laws "remov[e] youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult[.]" *Id*. at 474. The Court summarized the considerations that may distinguish sentencing a juvenile from sentencing an adult as follows:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors

---

[4] US Const, Am VIII.

(including on a plea agreement) or his incapacity to assist his own attorneys. . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. [*Id*. at 477-478 (citations omitted).]

Defendant was 17 years old at the time he committed the crimes for which he was sentenced. The felony-murder statute, MCL 750.316(1)(b), provides that defendant was to be sentenced to life in prison without the possibility of parole. The trial court initially sentenced defendant to life without parole; however, the parties stipulated to resentencing given the holding in *Miller*. The prosecutor did not seek a life-without-parole sentence. On resentencing, the trial court sentenced defendant to 35 to 60 years' imprisonment for the felony-murder conviction. Defendant was sentenced according to MCL 769.25. After *Miller* was decided, the Michigan Legislature enacted MCL 769.25 and MCL 769.25a. According to MCL 769.25(1), the statute applies to "a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2)"—which includes MCL 750.316 (covering felony murder predicated on a robbery)—when the defendant's conviction was after the statute was enacted and in other specified situations. MCL 769.25(2) provides the prosecutor with the option of "fil[ing] a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole" for listed crimes. Should the trial court deny the prosecutor's motion, "the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25(9). The 35-to-60 year sentence complied with the statutory range but the low end of the range was higher than the minimum sentence mandated by law.

In *People v Wines*, ___ Mich App ___, ___; ___ NW2d ___ (March 8, 2018) (Docket No. 336550); slip op at 2, the Court "face[d] the question whether, and if so how, *Miller* applies to the sentencing of a minor for first degree murder when the prosecution does not seek a sentence of life without parole." The Court disagreed with the prosecutor's argument that *Miller* limited consideration of the "attributes of youth" factors only to sentencing proceedings involving a consideration of a sentence of life without parole. *Id*. at 3. The Court concluded:

there is no *constitutional* mandate requiring the trial court to specifically make findings as to the *Miller* factors except in the context of a decision whether or not to impose life without parole. We further conclude when sentencing a minor convicted of first degree murder, when the sentence of life-without-parole is not at issue, the court should be guided by a balancing of the *Snow*[5] objectives and in that context is required to take into account the attributes of youth such as those described in *Miller*. [*Id*. at 4.]

In *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), the Court stated that the "basic considerations" to "determin[e] an appropriate sentence" are: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence

---

[5] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

of others from committing like offenses." According to the *Wines* Court, "[t]he process of properly balancing these objectives in the case of a minor defendant necessitates consideration of the distinctive attributes of youth." *Wines*, ___ Mich App at ___; slip op at 4. The Court stated that "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a term of years pursuant to MCL 769.25a[]$^6$ so undermines a sentencing judge's exercise of his or her discretion as to constitute reversible error." *Id.*

Here, the Court did not give any justifications at all for its sentence and we therefore vacate the sentence and remand for resentencing and articulation in light of existing caselaw. See *People v Van Etten*, 163 Mich App 593, 595-597; 415 NW2d 215 (1987). Although the prosecution on appeal provides adequate reasons for the sentence imposed, this is a task for the trial court to perform.

Defendant's convictions are affirmed but this case is remanded for resentencing. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher

---

[6] The *Wines* Court was considering MCL 769.25a, which involves situations concerning the retroactive application of *Miller* and the procedure to be employed. However, there is no basis from which to conclude that the *Wines* holding does not equally apply to "non-retroactive" cases under MCL 769.25.