*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL ANTHONY THIGPEN,

        Defendant-Appellant.

FOR PUBLICATION
December 28, 2023
9:05 a.m.

No. 360351
Kalamazoo Circuit Court
LC No. 2019-002082-FC

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

YATES, J.

In the early morning hours of November 20, 2019, defendant, Michael Anthony Thigpen, shot and killed Roosevelt Thompson. Defendant confessed to the shooting, but he claimed that he acted in self-defense. Defendant now appeals of right his convictions by jury verdict on one count of first-degree murder, MCL 750.316; two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and one count of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. We affirm.

## I. FACTUAL BACKGROUND

In 2019, defendant was romantically involved with two women. When one of the women found out about the other woman, she promptly ended the relationship with defendant. In a bizarre attempt to draw the woman back into a relationship, defendant called her and told her he was going to commit a murder. On November 19, 2019, defendant borrowed the other woman's vehicle and went for a drive. During that drive, defendant called his former girlfriend and told her that he was going to kill the first person he saw. In fact, his former girlfriend listened as defendant was driving, and then she heard gunshots.

Several hours later, defendant called his former girlfriend and told her to come outside. He met her outside, told her "he killed somebody," showed her a gun, and asked her to get rid of it for him, but she declined to do so. Finally, he instructed her to watch the news. When she saw a news report of the murder as defendant had described it, she promptly called the police. Crime-scene investigators collected bullet casings from a .45 caliber gun and video footage from Ring cameras.

Nothing was detected from the tape-lift test conducted inside the vehicle for gunpowder residue or the latent-print examination conducted on the exterior of the vehicle.

On November 22, 2019, defendant was arrested and then taken to an interview room, where Detectives John Stolsonburg and Gary Gaudard from the Kalamazoo Department of Public Safety (KDPS) interviewed him. At first, defendant insisted he had not been in Kalamazoo on the day of the killing. By the end of the interview, however, defendant admitted that he had been in the area and that he had had a gun. Defendant described the shooting as self-defense when the victim tried to get into his vehicle. Defendant stated "he'd rolled his window down and turned his music down and that he had reached for his gun which he said was on the seat next to him, the front passenger's seat[,] and shot" the victim as the victim tried to get into the vehicle. The forensic pathologist who performed the autopsy testified that the victim had been shot twice in the head and once in the chest.

During defendant's trial, Sergeant James Dunlop of the KDPS was deemed qualified as an expert witness on shooting-scene reconstruction, and then he testified about the lack of gunpowder particles from samples that were obtained from inside the vehicle. Defense counsel objected to Dunlop's testimony, claiming a report was not produced prior to trial, but defense counsel did not present expert testimony to rebut Dunlop's opinions. Nor did trial counsel consult with a firearms expert before the trial began. Dunlop informed the jury that he took part in processing the vehicle on November 23, 2019, looking for "firearm related evidence" including "gunpowder particles" that are "part of that firing of the firearm" and "lead plume . . . that's atomized elemental lead that is basically revolving out with the gun smoke." Because Dunlop did not find any partially burned or unburned gunpowder particles or "lead plume" inside the vehicle, he opined that the muzzle of the firearm used to shoot Roosevelt Thompson was outside the vehicle when the gun was fired at Thompson.

After the close of proofs, defense counsel asked the trial court to give the jury M Crim JI 7.16a, which defines a rebuttable presumption regarding fear of death, great bodily harm, or sexual assault, but the trial court refused to give that instruction because the facts at trial did not support a finding consistent with that instruction. The jury did receive instructions about self-defense, so the jurors were left to make their own decision on that issue. Ultimately, the jury found defendant guilty of one count of first-degree murder, two counts of felony-firearm, and one count of felon-in-possession.

On October 25, 2022, defendant filed a motion for a new trial and to expand the record on the bases that the "lead plume" test conducted by Sergeant Dunlop is unreliable junk science when used to establish whether a gun has been fired in a certain location, and that defense counsel was ineffective because he did not consult with an expert on that issue before trial. On December 16, 2022, the trial court heard testimony from a firearms expert, David Balash, and defense counsel, Matthew Wait. On January 27, 2023, the trial court issued a 17-page order denying defendant's motion and finding that defense counsel's decision not to consult with a firearms expert was neither deficient performance nor a matter that affected the outcome of the trial. Defendant now appeals.

## II. LEGAL ANALYSIS

Defendant challenges three aspects of the trial-court proceedings. First, he asserts that the prosecution's expert witness who discussed the "lead plume" test gave unreliable testimony, and defense counsel furnished ineffective assistance by failing to object to that testimony or to consult with any expert to counter that testimony. Second, defendant contends that the trial court erred in refusing to instruct the jury under M Crim JI 7.16a concerning the rebuttable presumption of fear of death or great bodily harm. Third, defendant insists that his convictions for felony-firearm and felon-in-possession violate double-jeopardy principles. We shall address these three arguments in turn, and then we shall consider the arguments made in defendant's Standard 4 brief.[1]

### A. EXPERT TESTIMONY AND INEFFECTIVE ASSISTANCE OF COUNSEL

Contesting the expert testimony of Sergeant Dunlop about the "lead plume" test, defendant moved for a new trial because the expert's testimony was unreliable and defense counsel provided ineffective assistance by failing to challenge that testimony. The admission of expert testimony is subject to review for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). Here, however, defendant never interposed an objection to the reliability of Sergeant Dunlop's expert testimony before or during trial, so our review is limited to a search for plain error affecting defendant's substantial right. *People v Thorpe*, 504 Mich 230, 252-253; 934 NW2d 693 (2019). To avoid forfeiture under the plain error rule, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected [defendant's] substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant first raised the issue of the reliability of Dunlop's expert testimony in a motion for a new trial filed more than nine months after defendant's trial ended. Defendant contended in his posttrial motion that Dunlop's testimony was "wholly unreliable junk science that prejudiced [defendant]'s self-defense claim and was inadmissible under MRE 702 or MRE 403." In response, the trial court conducted an evidentiary hearing on December 16, 2022, at which David Balash— an expert presented for the first time by the defense—testified. The trial court rejected defendant's junk-science contention in an order on January 27, 2023. The trial court determined that Dunlop's "extensive training and qualifications and the procedures and methods he used to decipher gunshot residues meet the threshold MRE 702 requirements necessary to have his testimony received by the jury." Additionally, the trial court found that "David Balash's testimony is but a contradictory opinion and Defendant has provided insufficient factual and legal support for this court to conclude that Sgt. Dunlop's methodology should have necessarily been excluded under either MRE 702 or MRE 403 as 'wholly unreliable junk science.' " We agree.

The United States Court of Appeals for the Sixth Circuit, applying FRE 702 and FRE 403, rejected the very same arguments defendant makes here under MRE 702, MRE 403, and *Daubert v Merrell Dow Pharms, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), even though all

---

[1] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)." *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

those arguments had been properly preserved for appellate review. *United States v Stafford*, 721 F3d 380 (CA 6, 2013). The Sixth Circuit ruled that the defendant's objections to expert testimony concerning gunshot residue (GSR) analysis from the government's expert witness challenged the weight, rather than the admissibility, of that evidence. *Id*. at 393-395. Although we are not bound to follow the Sixth Circuit's decision in *Stafford*, see *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), we find the reasoning in that decision persuasive.[2] *Wormsbacher v Phillip R Seaver Title Co, Inc*, 284 Mich App 1, 5; 772 NW2d 827 (2009). In addition, even if we disagreed with *Stafford*, its existence and cogent analysis demonstrate that the trial court did not commit plain error in admitting the expert testimony of Sergeant Dunlop.

Recognizing the hurdles erected by plain-error review, defendant has elected to frame his challenge to the admission of the expert testimony primarily as a claim of ineffective assistance of counsel. To prevail on that claim, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Whether a defense attorney "performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id*. at 47. A trial court's finding of fact is clearly erroneous when, although there is evidence to support it, we, on the whole record, are left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008).

In this case, defense counsel testified that he had notice of the prosecution's intent to call expert witnesses (including Sergeant Dunlop) at trial. Prior to trial, defense counsel was provided with a police report that Sergeant Dunlop wrote describing "tape lifts [that were] negative for the presence of lead on the four lifts[,]" but defense counsel did not discuss those tests with an expert before defendant's trial. Defense counsel presumed the tests were designed to determine whether a gun was fired from inside the car. Defense counsel acknowledged that he could have used the information David Balash provided at the posttrial hearing to rebut the prosecution's theory that it was implausible that defendant fired his gun from inside the car. Defense counsel stated: "I don't think that [Sergeant Dunlop's] testimony put [defendant] standing outside the vehicle." Therefore, defense counsel may have found Balash's testimony helpful, but he did not regard it as imperative. Defense counsel's strategy to minimize the importance of Sergeant Dunlop's testimony instead of

---

[2] Defendant cites our Supreme Court's decision in *People v Young (After Remand)*, 425 Mich 470, 500; 391 NW2d (1986), to contend that "Michigan courts have recognized GSR tests as unreliable junk science." But *Young* dealt with an expert's testimony about discredited blood tests, not GSR tests. See *id*. at 472. Moreover, in making a comparison to the discredited "paraffin test" that was "used by law enforcement agencies and introduced as evidence in court to establish that a suspect has recently fired a gun[,]" *id*. at 500, our Supreme Court was *not* discussing the "lead plume" test used by Sergeant Dunlop in defendant's case. Indeed, defendant's posttrial expert, David Balash, conceded that "gunshot residue testing is a very broad term" that is "used to characterize a host of different type[s] of testing, and perhaps wrongly used[.]" Balash also acknowledged that Dunlop did not use the "paraffin test in this case[.]" Finally, with respect to Dunlop's test for lead, Balash stated: "It sounds and appears to me that it was done correctly" and "no lead was found."

-4-

directly rebutting it was an appropriate, reasonable trial strategy.  We do not have the latitude on appeal to second-guess defense counsel's reasonable trial strategy.  *People v Traver (On Remand)*, 328 Mich App 418, 422; 937 NW2d 398 (2019).

To be sure, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52.  Also, defense counsel "always retains the 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Id*.  But even assuming that defense counsel provided deficient assistance by not consulting an expert and not properly contesting or investigating the scientific validity of Sergeant Dunlop's testimony, defendant cannot show that that shortcoming rose to the level of prejudice to his defense.  The record contains overwhelming evidence refuting defendant's self-defense claim regardless of whether he was inside the vehicle when he shot Roosevelt Thompson.  Defendant's former girlfriend testified that defendant told her that he was going to kill the next person he saw and, several hours later, he showed her a gun and told her where he shot the victim.  Defendant's other girlfriend testified that two guns were missing from her apartment and defendant had acted "nonchalant" when she informed him of the news of the victim's death.  Significantly, defendant denied involvement in the shooting until approximately one hour into his police interview, when an interrogating officer suggested that the victim may have tried to carjack defendant.  After that suggestion, defendant completely changed his story and claimed self-defense.  Notably, defendant never indicated that the victim reached into his vehicle or made any comprehensible verbal threats. As a result, the trial court correctly ruled that even if defense counsel's performance was deficient, defendant did not demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.

## B.  JURY INSTRUCTIONS ON SELF-DEFENSE

Defendant faults the trial court for denying his request for jury instruction M Crim JI 7.16a, and he contends that error deprived him of his constitutional right to present a defense.  We review questions about the legality of jury instructions de novo, but "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted). We "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).  Even if somewhat imperfect, reversal is not warranted if the "instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229.  An unpreserved claim of constitutional error is reviewed only for plain error affecting the defendant's substantial rights.  *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007).

Addressing defendant's challenges to the jury instructions, the trial court distinguished its willingness to give two standard instructions on self-defense, i.e., M Crim JI 7.15 and 7.16, from its unwillingness to give the rebuttable-presumption instruction on self-defense, M Crim JI 7.16a. As a result, the jury was permitted to consider defendant's claim of self-defense and instructed that "a person is not required to retreat if he: has a legal right to be where he is at that time; and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm of himself or another person." M Crim JI 7.16.  But the trial court refused to go so far as telling the jury about the rebuttal presumption under M Crim JI 7.16a, which states:

-5-

(1) If you find both that -

(a) the deceased was in the process of breaking and entering a business or dwelling, or committing home invasion, or had broken into a business or dwelling, or committed home invasion and was still present in the business or dwelling, or was unlawfully attempting to remove a person from a dwelling, business, or vehicle against the person's will,

and

(b) the defendant honestly and reasonably believed the deceased was engaged in any of the conduct just described

- it is presumed that the defendant had an honest and reasonable belief that imminent [death / great bodily harm / sexual assault] would occur. The prosecutor can overcome this presumption by proving beyond a reasonable doubt that the defendant did not have an honest and reasonable belief that [death / great bodily harm / sexual assault] was imminent.

The trial court deemed that instruction inapplicable because the only evidence that the victim was unlawfully attempting to remove defendant from his vehicle consisted of defendant's statement to the police that the victim "grab[bed] at or jiggle[d] the door handle" of defendant's vehicle.

"With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having a duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). The SDA went into effect on October 1, 2006, *id*., and with it the Legislature enacted MCL 780.951(1), see 2006 PA 311, which forms the basis for the rebuttable presumption defined in M Crim JI 7.16a. A defendant in a motor vehicle (as opposed to a dwelling or business premises) can rely on the rebuttable presumption only when the "individual against whom deadly force . . . is used . . . is unlawfully attempting to remove [the defendant] from a[n] occupied vehicle against his or her will." MCL 780.951(1)(a).

Addressing an argument virtually identical to defendant's claim in this case, we explained that the rebuttable-presumption instruction was unwarranted even though the evidence established that the victim "approached [the defendant's] vehicle and opened the front passenger door" with a "stick or a knife in his hand[.]" *People v Head*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2020 (Docket No. 346431), p 5. Despite a witness's belief that the victim "was going to strike" the defendant, no witness "testified to believing that [the victim] was trying to remove defendant from the vehicle, or to any actions by [the victim] that might have led to such an inference." *Id*. Therefore, we concluded that the rebuttable-presumption instruction in M Crim JI 7.16a(1) "was not applicable to any material issue, element or defense, and was not supported by the evidence." *Id*. Defendant's argument in this case, which relies on the victim's "grab[bing] at or jiggl[ing] the door handle[,]" offers a weaker basis than the facts in *Head* for the rebuttable-presumption instruction in M Crim JI 7.16a. We need not follow *Head*, which is unpublished, *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), but we find its analysis persuasive on the requirements for obtaining a rebuttable-presumption instruction under M Crim JI 7.16a. As

a result, we conclude that the trial court did not err in refusing to instruct the jury on the rebuttable presumption defined in MCL 780.951(1) by reading M Crim JI 7.16a to the jurors.

Finally, defendant makes a constitutional issue of the trial court's jury instructions on self-defense by insisting that the denial of his request for the rebuttable-presumption instruction under M Crim JI 7.16a rises to the level of an abridgment of his right to present a defense. A defendant "has a due process right to present a defense under the state and federal Constitutions." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). "But the right to present a defense is not absolute." *Id*. A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" during a trial. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citations omitted). Because defendant did not present this constitutional challenge in the trial court, we can only review the matter for plain error affecting substantial rights. *Hanks*, 276 Mich App at 95.

Here, defendant was not denied the right to present the defense that he acted in self-defense. First, defendant's recorded statement to the police was played for the jurors at trial, thereby giving defendant the opportunity to argue that he acted in self-defense even though defendant elected not to testify at trial. Second, the trial court gave the jury two comprehensive instructions, i.e., M Crim JI 7.15 and M Crim JI 7.16, defining the concept of self-defense for the jury and leading the jurors to consider self-defense in their deliberations. Third, the trial court instructed the jury, consistent with M Crim JI 7.20, that "[t]he defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense." In sum, other than reading M Crim JI 7.16a, the trial court did all that it could to afford defendant his right to present a defense of self-defense at trial. Because M Crim JI 7.16a was not an appropriate instruction on the facts of the case and the trial court did everything else in its power to ensure defendant's right to present a defense, no deprivation of defendant's constitutional right to present a defense occurred.

## C. DOUBLE JEOPARDY AND THE FIREARMS CONVICTIONS

Defendant argues that the trial court committed plain error by allowing his convictions for felony-firearm and felon-in-possession to stand because those convictions arose from the same act, so the convictions on those charges violate double-jeopardy principles. Both our Supreme Court and this Court have decided, however, that separate convictions for the offenses of felony-firearm under MCL 750.227b and felon-in-possession under MCL 750.224f pass muster under the United States Constitution and the Michigan Constitution of 1963. *People v Calloway*, 469 Mich 448; 671 NW2d 733 (2003); *People v Mitchell*, 456 Mich 693; 575 NW2d 283 (1998); *People v Dillard*, 246 Mich App 163; 631 NW2d 755 (2001). Those decisions hold that our Legislature intended to provide for an additional felony charge and sentence when a person possessing a firearm commits any felony other than the four exceptions listed in the felony-firearm statute.[3] *Calloway*, 469 Mich at 452; *Mitchell*, 456 Mich at 698; *Dillard*, 246 Mich App at 167-168.

---

[3] "[W]hen considering whether two offenses are the 'same offense' in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language

Defendant suggests that our Supreme Court's decisions in *Calloway* and *Mitchell* no longer constitute binding precedent because of our Supreme Court's double-jeopardy analysis in *People v Miller*, 498 Mich 13, 17-26; 869 NW2d 204 (2015). But in *Miller*, our Supreme Court explained that "it is not a violation of double jeopardy to convict a defendant of multiple offenses if 'each of the offenses for which defendant was convicted has an element that the other does not . . . .' " *Id*. at 19. That analysis comports with the holding in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), that when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." In this case, that test is satisfied "[b]ecause each of the felonies of which defendant was convicted . . . has an element that the other does not," so "they are not the 'same offense' under either Const 1963, art 1, § 15 or US Const, Am V." See *People v Smith*, 478 Mich 292, 324; 733 NW2d 351 (2007). Specifically, the felon-in-possession statute (MCL 750.224f) requires proof that the defendant was a convicted felon at the time he possessed a firearm, *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016), whereas the felony-firearm statute (MCL 750.227b) requires proof that the defendant possessed a firearm while he committed a new felony. *Id*. at 268-269. Consequently, defendant's convictions and sentences for felon-in-possession and felony-firearm do not violate principles of double jeopardy.

## D. ISSUES IN STANDARD 4 BRIEF

In a Standard 4 brief, defendant contends that he was denied effective assistance of counsel for a host of reasons. First, he argues that his attorney failed to confront his former girlfriend with evidence that contradicted her testimony, i.e., that she did not tell defendant that she did not want to talk to him after she learned of his relationship with his other girlfriend. Next, defendant claims that his attorney failed to confront his other girlfriend with inconsistencies in her testimony, i.e., that a KDPS incident report stated that she discovered her guns missing on November 9, 2019, not November 20, 2019. Defense counsel's decision not to confront the women with inconsequential inconsistencies like that constituted reasonable trial strategy. *Traver*, 328 Mich App at 422.

Defendant next argues that his defense attorney refused to allow defendant to testify after defendant expressed a desire to do so. A criminal defendant has a constitutional right to testify in his own defense. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020). But "if a defendant decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. at 657 (quotation marks and citation omitted). Moreover, there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify. *Id*. Nowhere in the record can we find any evidence that defendant told his attorney that he wanted to testify in his own defense. Defendant never expressed his desire to testify on the record. After the prosecutor rested her case, defense counsel stipulated to the admission of two videos and stated:

___

evinces a legislative intent with regard to the permissibility of multiple punishments." *People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015). Those decisions concluded their analysis at that initial step. But when "the legislative intent is not clear, courts must then apply the abstract legal elements test . . . to discern legislative intent." *Id*. Defendant urges us to take that second step, so we shall undertake that analysis for the sake of completeness.

"With that the defense has no more evidence to produce Your Honor and would rest." Defendant did not disagree on the record. "[F]ailing to express a wish to testify, if there was an opportunity to do so, is sufficient to 'acquiesce' in trial counsel's decision not to call a defendant to the stand." *Id*. Thus, defendant has not established reversible error arising from the fact that he did not testify in his own defense at trial.

Next, defendant criticizes his defense attorney for failing to present evidence that witnesses reportedly heard gunshots at 1:23 a.m. and for failing to describe the location of the Ring doorbell footage in relation to the shooting. Defense counsel's decision not to focus on that evidence was perfectly reasonable trial strategy because defendant admitted during his recorded statement to the police that he was the one who fired the three shots that killed Roosevelt Thompson. See *Traver*, 328 Mich App at 422.

Finally, defendant insists that his attorney's lack of preparedness is revealed in his pretrial motion to dismiss for lack of a speedy trial because his attorney admitted to having been forced to decide whether to proceed to trial or wait additional time to deal with tardy discovery. Defendant must show prejudice resulting from the lack of preparation in order to prevail on that claim. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). Defense counsel did not admit that he caused delay, but rather alleged that any delay was caused by the prosecution failing to provide discovery in a timely manner. Also, defendant did not provide any examples of what preparation or investigation his counsel could have or should have done and what information could have been obtained through such preparation or investigation. The defense at trial focused upon defendant's recorded interview in which defendant asserted self-defense. An unsuccessful trial strategy does not inherently render that strategy unreasonable or rebut the presumption of effective assistance. See *Trakhtenberg*, 493 Mich at 53 n 8. Here, although the trial strategy was not successful, it was nonetheless reasonable.

Affirmed.

/s/ Christopher P. Yates
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle